IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                                                Case No. 25-20897-MCR

OB LLC                                                            Chapter 11

    Debtor.
_____/

**MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF ALL LIENS**

Comes now OB LLC ("OB" or the "Debtor") by and through undersigned counsel, pursuant to Section 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002 and 6004, and moves this Honorable Court for leave to sell the real property commonly known as 8800 Grandhaven Avenue, Upper Marlboro, Maryland 20772 (the "Property"), free and clear of all liens, and in support thereof states as follows:

I.    **Introduction**

This case was filed shortly before a scheduled foreclosure auction, scantly two days ago, with transparent ambitions of (i) permitting the Debtor occasion to sell the Property (the Debtor's sole asset) through an arm's length transaction; and (ii) creating a forum in which a dispute over the size of a secured creditor's claim may be efficiently adjudicated. With some pride, OB is now prepared to move forward with a sale that will accomplish the former goal—and that will do so in a sum sufficient to clear the claim of the lone secured creditor herein, regardless of how the latter matter may be ultimately adjudicated.

What is proposed herein is a sale of the Property, free and clear of all liens, to a bona fide, good faith third party purchaser, for the sum of $4 million. The Debtor believes the claim of its sole secured creditor, Democracy Capital Corporation ("DCC"), to be approximately $2.7 million. Upon information and belief, it appears DCC believes itself to hold a claim closer to $3.6 million.

1

The only other scheduled liabilities in this case are (i) taxes due to Prince George's County, Maryland, which the Debtor believes to be $0.00 but which have been scheduled in an abundance of caution; and (ii) a potential breach of contract claim held by Werrlein Properties Limited Liability Company ("WPLLC"), stemming from a previous agreement to sell the Property. Insofar as WPLLC is the proposed buyer *sub judice*, any such claim will be extinguished through the consummation of the instant sale transaction. And that means the relief sought instantly will be of a magnitude sufficient to ensure the Debtor's estate holds funds sufficient to retire the claims of all creditors, in full.

Too often, real estate entities petition for chapter 11 relief in what seems a poorly-disguised effort to stave off foreclosure and bide time in search of little more than ever-diminishing hope, as claims accrue interest and estates' administrative solvency descend into tatters. OB is proud to shirk this trend, having seen chapter 11 as a vehicle to avoid a foreclosure but having done so with rightful knowledge of a buyer's pendency in the proverbial wings. Two days into this case, OB is now ready to move forward with a sale.

## II.     Standard

The Bankruptcy Code provides, *inter alia*, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1).

In assessing such a proposed sale, courts normally consider a variety of factors, including, but not limited to, whether:

> (1) the contract proposed by the Trustee was made at arm's length with a good faith purchaser; (2) the Property was fully and properly marketed; (3) the proposed sale price was the fair value for the Property; and (4) the proposed sale was in the best interest of the estate and comported with the requirements of 11 U.S.C. § 363.

*In re Andresen*, 2006 WL 4481984, at *2 (Bankr. D. Md. 2006).

Further, "[c]ourts generally look to the trustee's business judgment in analyzing asset sales under Section 363(b)." *In re MCSGlobal Inc.*, 562 B.R. 648, 654 (Bankr. E.D. Va. 2017) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016)).

### III.   Relevant Information

OB and WPLLC originally entered into a contract to convey the Property on December 19, 2023 (the "Original Contract"), a copy of which is appended hereto as Exhibit A. Of even date, WPLLC has agreed to an amendment thereof (the "Amendment"), aimed at ensuring conformity with a bankruptcy-centric sale and resoling certain temporal issues stemming from the Original Contract; a copy of the Amendment is attached hereto as Exhibit B.

Pursuant to Local Rule 6004-3 (inclusive of the portion thereof that incorporates Local Rules 6004-1), the Debtor notes as follows:

1. While the Debtor does not hold a recent appraisal upon which any reliance is placed, the Property is tax assessed for $1,947,100.00.

2. The asset is scheduled as being worth $3.5 million. *See* DE #1 at p. 10.

3. The proposed purchaser is WPLLC (defined *supra*).

4. There does not exist any relationship between WPLLC and any party in interest, aside from the potential standing of WPLLC to assert what would be a disputed breach of contract claim, premised upon the Original Contract, which, in turn, has led to WPLLC being scheduled as a creditor herein.

5. WPLLC is agreeing to pay $4 million in the lawful currency of the United States. *See* Amendment, Exhibit B, at § 3.

6. A notice of opportunity to object, setting forth a December 15, 2025 objection deadline, is being filed herewith.

7. The foregoing notice of opportunity to object also sets forth a hearing date of January 8, 2026 at 11:30 am, in Courtroom 3-C.

8. The foregoing notice further observes that this motion may be granted, and the Property may be sold without further notice, if a timely objection is not filed.

9. The Debtor's estate does not propose to pay any charges or costs in connection with this sale, *except* that (i) real estate taxes may be prorated at closing, *see* Original Contract, Exhibit A, at § 5(e); (ii) transfer and recordation costs are to be split evenly between the Debtor and WPLLC, *id.* at § 5(f); and (iii) certain legal fees and expenses are being incurred in connection with the bringing of this motion, for the payment and reimbursement of which the Debtor's proposed counsel will ultimately petition, separately.

10. The proposed sale is not to an insider.

11. There does not exist any management company and, as such, there is no agreement with management impacted by the proposed sale.

12. No releases are being granted through the proposed sale.

13. The Debtor does *not* propose an auction or a competitive sale for the property, but respects that any person wishing to present a higher and better offer may do so during the time of this motion's pendency. Insofar as the proposed purchase price is sufficient to retire all claims in full, it is not believed a competitive sale process is sensible in the idiosyncratic contours of this case and, equally, there is a very real concern that engaging such a process would lead to the incursion of unnecessary administrative expenses, whether in the form of a broker's or auctioneer's commission or otherwise.

14. WPLLC has posted a deposit in the sum of $400,000.00, which is being held by a third party escrow agent. Section 3 of the Original Contract governs this deposit. The agreement does not set forth terms for the forfeit of the deposit that appear to be relevant *sub judice*, other than to observe such to be non-refundable in nature. *See* Original Contract, Exhibit A, at § 3(d).

15. The closing deadline is 30 days after entry of an order granting this motion. *See* Amendment, Exhibit B, at § 2(a).

16. No interim agreements—concerning management or comparable subjects—have been entered into between the Debtor and WPLLC.

17. The Debtor seeks authority—but not a mandate—to use sale proceeds to retire the undisputed portion of the claim of DCC; the residue of proceeds will be placed in a debtor-in-possession bank account pending further order of this Honorable Court.

18. While this sale will be for substantially all assets of the Debtor, access to the Debtor's books and records will not be compromised through closing upon the contemplated sale.

19. No sale of any avoidance actions is proposed.

20. The proposed sale does not contain any provisions concerning successor liability.

21. Upon information and belief, there do not exist any leases or licenses impacting the Property.

22. Insofar as this motion does not propose an auction, no allowance—or disallowance—of credit bidding is sought herein.

23. The Debtor does not seek relief from the provisions of Federal Rule of Bankruptcy Procedure 6004(h).

## IV. Argument: The Sale Should be Approved

The sale embodied in the Original Contract and Amendment is a reasonable exercise of the Debtor's business judgment and merits approval as such. Indeed, this is not a particularly close call—the Debtor is proposing to retire all secured claims, in full, within 2 days of seeking bankruptcy protection, and to amass monies sufficient to then pay all unsecured claims in full.

Addressing the first of the factors enumerated by the *In re Andresen* Court, the Original Contract and Amendment were negotiated at arm's length with a good faith purchaser. The Debtor has no relationship with WPLLC and has simply sought to sell the asset to a sensible and well-positioned purchaser. The $400,000.00 earnest money deposit certainly suggests a modicum of seriousness and good faith that ought not be overlooked.

Vis a vis the second rigor of the *In re Andresen* Court, the Debtor welcomes anyone to come forth with a higher or better offer on the Property, but equally notes such is immaterial for bankruptcy purposes. So long as the extant agreement is sufficient to pay all claims in full, any detriment occasioned by the informality of marketing will harm only the Debtor's equity interest, not creditors.

Addressing the third criterion, $4 million is a fair value for the asset being conveyed under the Contract. The Property is tax assessed at $1,947,100.00 and is non-income producing. While the Debtor scheduled the asset for significantly more ($3.5 million), the proposed sales price is a hefty premium even upon that number. As the Supreme Court of the United States has observed, fair market value is "'what a willing buyer would pay in cash to a willing seller.'" *United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 633 (1961) (quoting *United States v. Miller*, 317 U.S. 369, 374 (1943); citing *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950);

6

*United States v. Cors*, 337 U.S. 325, 333 (1949)). Here, WPLLC is a willing buyer and the Debtor is a willing seller.

Finally, the proposed sale *sub judice* is assuredly in the best interest of the estate and, per this motion, comports with the rigors of Section 363 of the Bankruptcy Code. As discussed above, this sale will bring cash into the estate sufficient to cover all claims in full. It is genuinely difficult to conceive of an argument as to how such would not be in the best interest of the estate.

**V.     Conclusion**

WHEREFORE, OB respectfully prays this Honorable Court (i) authorize OB to enter into the Amendment (and, thereby, perform under the Original Contract), subject to any higher and better offers; (ii) authorize—but not require—OB to pay at closing the undisputed portion of the claim of DCC; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: November 21, 2025      By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Debtor*

*[Certificate of Service on Following Page]*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of November 2025, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Nicole C. Kenworthy    bdept@mrrlaw.net
- Stephen A. Metz    smetz@offitkurman.com, mmargulies@offitkurman.com;MD71@ecfcbis.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on the 22nd day of November, 2025, a copy of the notice attached hereto (but not of this motion) is being sent, via US Mail, postage prepaid, to:

Democracy Capital Corporation
4800 Montgomery Lane
10th Floor
Bethesda, Maryland 20814

Comptroller of Maryland
Revenue Administration Division
PO Box 549
Annapolis, Maryland 21404-0549

Werrlein Properties Limited Liability Company
522 Defense Highway
Annapolis, Maryland 21401

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.