## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re | **Case No.  25-20897** |
| **OB LLC,** | **Chapter 11** |
| **Debtor.** | |

## OBJECTION TO MOTION TO SELL REAL PROPERTY FREE
## AND CLEAR OF ALL LIENS

Democracy Capital Corporation ("Democracy") objects to the Motion to Sell Real Property Free and Clear Of All Liens [D.E. 10] ("Sale Motion") filed by the Debtor, OB, LLC.  In support of its Objection, Democracy states as follows:

### I.
### Introduction

The Debtor is a single asset real estate debtor whose only asset is a parcel of undeveloped land.  Democracy is the only meaningful creditor in this case.  Democracy holds a first-priority lien against the property.  Democracy's loan to the Debtor has been in payment default for many years.  The outstanding loan balance has grown significantly due to the accrual of interest and the fact that Democracy has been forced to pay the real estate taxes for the property for many years.

The Debtor commenced this case to stop a foreclosure sale of the property initiated by Democracy.  Less than a week later, the Debtor filed its Sale Motion, which seeks permission to sell the property to a third-party for the gross sales price of $4 million.  The Debtor insists that the sale price is fair, despite the fact that the Debtor has not recently listed the property for sale or obtained an appraisal to determine its value.

The current amount owed on Democracy's loan is slightly less than the proposed gross sales price for the property.  Although Democracy believes that the Debtor has not made a reasonable attempt to maximize the sale price of the property, Democracy might be willing to forgo an objection and permit the sale to proceed if the Debtor was proposing to pay Democracy the full amount owed from the net sale proceeds.  However, that is not what the Sale Motion proposes to do.  Instead, the Sale Motion, in conjunction with the Debtor's filed plan, proposes to pay Democracy only $2.7 million from the net sale proceeds and grant Democracy a lien capped at $1 million on the balance of the sales proceeds, an amount that would not fully secure the unpaid balance of Democracy's secured claim.  The Debtor then intends to engage in protracted litigation with Democracy regarding the unpaid portion of its secured claim, while post-petition interest, default charges, and attorneys' fees continue to accrue under Section 506(b) of the Bankruptcy Code.  This proposed sales structure, which seriously impairs Democracy's secured claim, is not permitted under Section 363 of the Bankruptcy Code.

First, Democracy is entitled under Sections 362 and 363 of the Bankruptcy Code, to adequate protection of its interest in the property, which the Debtor cannot provide.  The proposed sale eliminates the collateral securing Democracy's claim and replaces it with a fixed and rapidly diminishing pool of cash. The Debtor has no other assets, no income, and no means to fund adequate protection payments or offer replacement liens. Under the Debtor's own plan, the most that Democracy can ultimately recover is $3.7 million, an amount that is already less than the amount of Democracy's current secured claim.  A sales structure that turns an oversecured creditor into an under-secured creditor is the antithesis of adequate protection.  For these same reasons, the

Debtor cannot satisfy the requirements of Section 363(f) to compel a sale of property free and clear of liens over Democracy's objection.

Second, the sale also is not in the best interest of the Debtor's estate. The estate consists, primarily, of Democracy, who will be harmed by the sale. And the Debtor has not fulfilled its fiduciary duties to maximize value. It has made no effort to market the property or expose it to competitive bidding in order to achieve the highest and best price. Instead, the Debtor seeks to close the sale before an upcoming preliminary subdivision approval hearing, a milestone that could materially increase the fair market value of the property. And, because of the size of Democracy's claim and the proposed sale price, the sale will leave the estate administratively insolvent.

Third, the Debtor is plainly a "single asset real estate" debtor who is not eligible for relief under Subchapter V of the Bankruptcy Code. The Court should not approve the sale until this threshold issue is resolved. A properly classified SARE debtor is subject to different statutory requirements and creditor protections that bear on the Sale Motion. For example, if the Debtor is not eligible for Subchapter V, it will have to pay United States Trustee's fees, further deepening the administrative insolvency caused by the proposed sale.

In short, the proposed sale does not advance any legitimate reorganization or bankruptcy objective. It strips value from the estate's only meaningful creditor, relies on an improper procedural posture, and leaves the case unable to function going forward. The Bankruptcy Code does not permit a debtor to pursue a sale that diminishes creditor recoveries and undermines the very purpose of Chapter 11. For these reasons, the Sale Motion should be denied.

## II.
## Factual and Procedural Background

**A.     The Loan**

The Debtor is indebted to Democracy in connection with a $2.5 million commercial loan ("Loan") that is secured by a duly-perfected, first-priority lien in, to and against a parcel of raw land owned by the Debtor known as 880 Grandhaven Avenue, Upper Marlboro, Maryland 20772 (the "Property").   The Loan is evidenced by various documents executed by the Debtor (collectively, the "Loan Documents"), as more particularly described in Democracy's Proof of Claim [Claim No. 1], which Proof of Claim is incorporated by reference as if fully set forth herein. As noted therein, the Debtor is currently indebted to Democracy under the Loan in the amount of $3,917,945.54.

The Debtor defaulted on the Loan shortly after it was made and has not made any payments on the loan since 2019.  Because the Debtor failed to pay the real estate taxes owed on the Property, Democracy has been required to pay the taxes with its own funds for more than five years.

Prior to the filing of this case, Democracy commenced a proceeding in the Circuit Court for Prince George's County to foreclose its lien against the Property.  The Debtor then filed this case on the day of the foreclosure sale to stave off the sale.

**B.     The Debtor and the Property**

The Debtor is a special purpose entity whose sole purpose is to hold title to the Property. The Property is raw, undeveloped land that the Debtor owns passively.  The Debtor has no employees or place of business, maintains no bank accounts, has filed no tax returns in the past

few years, and keeps no books and records. There is simply no business to preserve and no operations to reorganize. The Debtor's only "business" is to sell the Property.

**C.      The Sale Motion**

By way of the Sale Motion, the Debtor seeks to sell the Property to Werrlein Properties, LLC (the "Purchaser") for a purchase price of $4 million.  The Debtor did not undertake any efforts to market the Property for sale prior to entering into the contract of sale with the Purchaser.  Nor did it obtain an appraisal of the Property to establish its value.   Instead, it simply executed an amendment to a contract that it had entered into with the Purchaser several years ago that sets an arbitrary, non-market purchase price for the Property.

Under the contract, the Debtor and the Purchaser are required to split all closing costs, including transfer and recordation taxes. Those taxes alone are approximately 2.45% of the purchase price, or about $98,000 in the aggregate.  As a result, the sale proceeds available to the estate will be reduced by at least $49,000, yielding proceeds of approximately $3,951,000 before accounting for any additional standard closing costs, prorations, or fees.   This means that, following a sale, there will be less than $40,000 in net proceeds over what is owed to Democracy as of the date of this Objection.[1]

---

[1] The Debtor has filed a 363 motion to sell the Property.  Accordingly, the exemptions from transfer and recordation taxes provided by 11 U.S.C. § 1146 are inapplicable. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33 (2008). The Debtor also proposes the same sale in its Plan of Reorganization, for which the exemption would apply.  It is unclear which path the Debtor is pursuing.  Regardless, because this pleading concerns a request for authority to sell the Property pursuant to Section 363, it is appropriate to consider the effect of the transfer and recordation taxes.

**D.     The Debtor "Disputes" Democracy's Claim**

As evidenced by Democracy's Proof of Claim, the outstanding balance on the Loan is currently $3,917,945.54.  However, the Debtor contends, with no factual basis, that it is only indebted to Democracy in the approximate amount of $2.7 million.  The Debtor's position appears to be based solely on an informal text message sent over two years ago, and is not based upon any mathematical calculation of the principal, interest, protective advances, late charges, and attorneys' fees actually accrued under the terms and conditions of the Loan Documents.

**E.     The Purchaser's Development Efforts**

The Sale Motion fails to disclose that the Purchaser has undertaken efforts to begin the development process associated with the Property.  Among other things, the Purchaser has submitted a proposed subdivision to Prince George's County for approval.  The subdivision would permit the construction of eighty-nine townhomes on the Property.  A preliminary plat has been submitted and a hearing for approval of the plat has been scheduled for February 19, 2026. Preliminary plat approval is likely to substantially increase the value of the Property.

**III.**
**Law and Argument**

**A.     The Debtor cannot adequately protect Democracy's interest in the Property.**

Section 363(e) of the Bankruptcy Code mandates that, "notwithstanding any other provision of this section," the Court "shall" prohibit or condition the sale of property as necessary to provide adequate protection to an entity with an interest in such property. 11 U.S.C. § 363(e). Here, the only way to adequately protect Democracy's interest is to prohibit the sale of the Property under the terms proposed in the Sale Motion.

6

The Property is the Debtor's sole asset and the only collateral securing Democracy's claim. The Debtor proposes to sell that collateral, hold the proceeds, and litigate the amount of Democracy's claim. While that litigation occurs, Democracy's claim will continue to accrue post-petition interest, late charges, and attorneys' fees under Section 506(b) of the Bankruptcy Code.[2] The only source of recovery will be a single, fixed pool of cash of barely $40,000 that will quickly shrink relative to the amount of the secured claim with each passing month.

Indeed, the Debtor has filed a plan of reorganization ("Plan") that concedes that there is not enough value to adequately protect Democracy's interest in the Property. In the Debtor's Plan, the Debtor proposes to pay Democracy $2.7 million at closing and grant it a lien on proceeds only to the extent of $1 million, effectively limiting Democracy's recovery to $3.7 million. ECF No. 22. This amount is insufficient to satisfy Democracy's current claim, let alone the additional amounts to which Democracy will be entitled under Section 506(b) by the time the dispute with the Debtor is resolved.

Stated simply, the Debtor proposes to transform Democracy from a fully-secured creditor into an under-secured creditor. Section 363(e) is designed to prevent this precise scenario by requiring adequate protection of Democracy's interest. But, there are no conditions that can adequately protect Democracy. The Debtor has no other assets with which to offer replacement

---

[2] There is no doubt that Democracy is oversecured and entitled to post-petition interest under Section 506(b). While Democracy believes that the value of the Property far exceeds the contract price, the contract price alone evidences that Democracy is oversecured.

7

liens or to fund adequate protection payments.  Accordingly, the only appropriate action under Section 363(e) is to prohibit the sale.[3]

**B.     The Debtor has not satisfied its burden under Section 363(f).**

Section 363(f) of the Bankruptcy Code authorizes a sale free and clear of a lien only if the debtor demonstrates that one of five specific statutory conditions is satisfied. 11 U.S.C. § 363(f)(1)–(5).  It is the debtor's burden to establish that at least one of those conditions exists.  *See In re Daufuskie Island Props., LLC,* 431 B.R. 626, 641 (Bankr. D.S.C. 2010).  Despite carrying this burden, the Debtor fails to address Section 363(f) in the Sale Motion.

Section 363(f) authorizes the Court to sell free and clear of Democracy's lien in the following circumstances:

> **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> **(2)** such entity consents;
> **(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> **(4)** such interest is in bona fide dispute; or
> **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C § 363(f).  Subsections (1), (2), and (5) are inapplicable on their face.  The only question is whether there is a "bona fide dispute" concerning Democracy's interest in the Property or whether the Property will be sold for a price higher than the aggregate value of all liens.

---

[3] The Debtor does not even purport to have Democracy's lien attach to the proceeds of the sale, the most basic form of adequate protection. Of course, this alone would not fix the adequate protection issue because there are insufficient proceeds.

**1.      Because of the Debtor's stated intention to litigate with Democracy, the Debtor cannot satisfy Section 363(f)(3).**

Section 363(f)(3) requires that the sale price exceed "the aggregate value of all liens on such property."   The Debtor cannot meet this burden for the reasons discussed *supra*.   Based on the Debtor's own Plan, there simply are insufficient proceeds to satisfy Democracy's secured claim in full.

**2.      Section 363(f)(4) is not satisfied because there is no bona fide dispute concerning Democracy's lien.**

Section 363(f)(4) permits a sale free and clear of a lien where "such interest is in bona fide dispute."   A bona fide dispute exists only where there are "substantial factual or legal questions that bear upon the debtor's liability." *In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004).

The Debtor's asserted dispute does not satisfy that standard.   The Debtor apparently relies solely on an informal text message sent by one of Democracy's representatives several years ago that referenced a rough estimated loan balance.   That message did not purport to be a formal payoff quote, was not accompanied by any supporting calculation of accrued interest, protective advances, late charges, or fees, and did not represent a final or binding figure under the Loan Documents. The Debtor identifies no legal or factual basis to challenge the enforceability of Democracy's lien, the applicability of the interest rate, or the inclusion of charges expressly provided for in the Loan Documents.   In short, while the Debtor is manufacturing a dispute, it has not met its burden of showing any "bona fide dispute" within the meaning of Section 363(f)(4).

9

**C.     The proposed sale is not in the best interest of the Debtor's estate.**

The Court must also determine whether the sale is in the best interest of the estate. The Debtor relies on factors similar to those articulated by this Court in *In re Andresen*, 2006 WL 4481984, at *2 (Bankr. D. Md. 2006), including:

- whether the contract was negotiated at arm's length with a good-faith purchaser;
- whether the property was fully and properly marketed;
- whether the sale price reflects the fair value of the property; and
- whether the proposed sale is in the best interest of the estate and complies with § 363.

While Democracy agrees that these factors are appropriate to consider, it fundamentally disagrees with the Debtor's application of the same.

**1.     The Debtor has made no effort to market the Property.**

The Debtor has made no effort to market the Property. The current contract is not the product of a competitive sale process.  Instead, it is simply based upon renewed discussions with a single purchaser who first expressed interest in the Property several years ago.  The Debtor did not retain a broker, undertake any coordinated outreach to developers, or utilize an auction or bid procedure to solicit competing offers. The Property has simply not been exposed to the market.

While the Sale Motion invites bids, this passive language is not a marketing process. Without affirmative efforts to notify the marketplace, potential bidders are unlikely to know the Property is available or that the Debtor is willing to accept competing proposals.

The absence of marketing raises serious concerns that the estate is not achieving fair value. Those concerns are reinforced by the fact that Democracy's auctioneer has already received inquiries from other prospective purchasers following the cancelled foreclosure sale.  Independent

10

interest exists, and there is no reason to believe the Purchaser's offer represents the highest and best value for the Property.

The lack of marketing efforts should be fatal to the Sale Motion.  *See, e.g.¸ In re Cloverleaf Enters., Inc.*, No. 09-20056, 2010 WL 1445487, at *3 (Bankr. D. Md. Apr. 2, 2010) (denying a proposed sale under § 363(b) and citing case law holding that "[t]he principal justification for § 363(b) sales is that aggressive marketing in an active market assures that the estate will receive maximum benefit"); *In re Mama's Original Foods, Inc.*, 234 B.R. 500, 503 (Bankr. C.D. Cal. 1999) (where the trustee initially did not market the property adequately and the court noted that "a trustee is required to market the property in the manner that is customary for property of the kind at issue.  If there is a recognized market for the sale of the property, the trustee is required to sell the property in the recognized market."); *In re Lahijani*, 325 B.R. 282, 288 (9th Cir. BAP 2005) (noting that "[t]he court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.").[4]

### 2.    The time of the sale ignores potential imminent value creation.

The Debtor seeks to close on the sale to the Purchaser before the preliminary subdivision approval hearing currently scheduled for February 19, 2026.  That approval is a clear potential value-enhancing milestone that reduces entitlement risk and materially increases the fair market value of the Property.

---

[4] The Debtor's motion relies extensively on *In re Andresen*, No. 01 25370 TJC, 2006 WL 4481984 (Bankr. D. Md. Nov. 1, 2006). Notably, in *Andresen*, the Court observed that, "[t]he broker actively and aggressively marketed the Property, including advertising the Property for sale on a weekly basis. That marketing process occurred for almost one year. The broker and Trustee entertained a number of offers for the Property."

### 3.    The sale is not in the best interest of the estate.

In the present case, there is no going-concern value to preserve, no employees to protect, and no operations to sustain.  The estate consists of a single asset and a single meaningful creditor: Democracy. The only other creditor the Debtor identifies is the Purchaser, which apparently intends to assert a contingent unsecured claim against the Debtor if its purchase of the Property is thwarted.  While the amount of this purported claim is not stated, it is fair to assume it will be dwarfed by the amount of Democracy's secured claim.

Despite the fact that Democracy has an undisputed lien against the Property and is essentially the only party with an interest in the Debtor's Estate, the proposed sale is set up in a manner that will likely harm Democracy by forcing it into an under-secured position in order to benefit the Purchaser, who, at best, has a contingent unsecured claim against the Debtor in an unknown amount.  This is particularly inequitable when considering the fact that Democracy has effectively funded the carrying costs for the Property over the past six plus years.  One of the reasons Democracy's claim is so large is that it has made substantial protective advances to pay the real estate taxes due and owing on the Property.  Absent these protective advances, there would be no value for the Debtor or the Purchaser to monetize.

Finally, the proposed sale will leave the estate administratively insolvent.  Following closing, the sale proceeds will constitute the Debtor's sole remaining asset and will be fully encumbered by Democracy's lien. There will be no unencumbered assets to fund even basic administrative expenses, let alone the litigation the Debtor supposedly intends to pursue against Democracy.  A sale that short-pays the estate's only secured creditor, results in administrative

insolvency, and strips the estate of the ability to function or conclude the case cannot be found to be in the best interest of the estate.

**D.      The Debtor is not eligible for relief under Subchapter V.**

Democracy will be filing a motion seeking a determination that the Debtor is a single asset real estate debtor or "SARE" under 11 U.S.C. § 101(51B).  Courts have consistently held that raw land held for development, where the debtor's primary activity is to hold bare legal title to that real property, falls within the definition of SARE. *See, e.g., In re Light Foot Group LLC*, No. 11-17945PM, 2011 WL 5509025, at *2 (Bankr. D. Md. Nov. 10, 2011); *In re Mountain Edge LLC*, No. 12-10835 T11, 2012 WL 4839784, at *3 (Bankr. D.N.M. Oct. 10, 2012) ("It is generally accepted that raw land or real property acquired and/or held for development falls within the definition of SARE"); *In re Kachina Village*, LLC, 538 B.R. 124, 127 (Bankr. D.N.M. 2015).

A proper SARE designation would make the Debtor ineligible for relief under Subchapter V. *See* 11 U.S.C. § 1182(1). Yet, the Debtor has filed under Subchapter V in order to gain the procedural benefits and leverage that status provides. Democracy intends to object to that designation.

A case filed as a traditional Chapter 11, rather than Subchapter V, materially alters the economics and protections available to the estate and its creditors. For example, the Debtor will incur quarterly U.S. Trustee fees in a non-Subchapter V Chapter 11, which would further deepen the administrative insolvency created by the proposed sale. The misclassification also improperly shifts leverage to the Debtor by temporarily sheltering it from statutory obligations and creditor remedies that would otherwise apply to a SARE debtor. These threshold issues must be resolved

before the Court considers a sale that the Debtor seeks to force through over Democracy's objection.

## IV.
## Conclusion

For all the foregoing reasons, the Court should deny the Sale Motion.

.                                          Respectfully submitted,

*/s/ Keith M. Lusby*
James T. Heidelbach (Bar No. 07715)
Keith M. Lusby (Bar No. 05596)
Gebhardt and Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5028
klusby@gebsmith.com

*Counsel to Democracy Capital Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, on this 15th day of December, 2025, I electronically filed the foregoing *Objection* electronically on all parties registered to receive notice in the above-captioned case via the Court's CM/ECF automated case management and electronic docketing system.


/s/ Keith M. Lusby
Keith M. Lusby