

<u>PURCHASE AND SALE AGREEMENT</u>

THIS PROPERTY PURCHASE AND SALE AGREEMENT (this "Agreement") dated as of the Effective Date, is entered into by and between OB LLC, a Delaware limited liability company ("Seller"), and WERRLEIN PROPERTIES LIMITED LIABILITY COMPANY, a Maryland limited liability company ("Buyer").

In consideration of the sum of Ten Dollars ($10.00), cash in hand paid, the receipt and sufficiency of which are hereby acknowledged, and of the mutual promises, contained in this Agreement, Buyer and Seller agree as follows:

1.   <u>Definitions:</u> Capitalized terms that are not defined when first used in this Agreement have the meanings set forth below.

<ul>
<li><u>a.</u>   <u>Authorities:</u> All federal, state and local governmental and quasi governmental agencies, bodies, entities, boards and authorities that have jurisdiction over the Property.</li>

<li><u>b.</u>   <u>Broker:</u> None.</li>

<li><u>c.</u>   <u>Closing:</u> The settlement on the purchase and sale of the Property at which Seller conveys title to Buyer by delivery of a deed and Buyer delivers the Purchase Price for the Property to Seller, which shall take place within six (6) months after the Effective Date, subject to extension pursuant to Section 1(o) below (the date on which Closing occurs is referred to as the "Closing Date").</li>

<li><u>d.</u>   <u>Deposit:</u> THREE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($350,000.00) cash to be deposited as set forth in Section 3 below, subject to increase pursuant to Section 1(o) below.</li>

<li><u>e.</u>   <u>Detailed Site Plan:</u> Shall have the meaning as defined in the Prince George's County, Maryland, County Code.</li>

<li><u>f.</u>   <u>Developer:</u> WERRLEIN PROPERTIES, LLC, a Maryland limited liability company.</li>

<li><u>g.</u>   <u>Documents.</u> All engineering, environmental, soils and other studies, surveys, maps, drawings and plans that relate in any way to the Property.</li>

<li><u>h.</u>   <u>Effective Date.</u> The date upon which both Buyer and Seller agree to all of the terms and conditions set forth herein, as evidenced by the latest date set forth next to the Parties' signatures below.</li>

<li><u>i.</u>   <u>Escrow Agent.</u> Monarch Title, Inc. 4313 Hamilton Street, Hyattsville, Maryland 20781; 2406671556; ATTN: Ben Horton; <u>BHorton@Monarchtitle.net</u></li>

<li><u>j.</u>   <u>Feasibility Period.</u> The period beginning on the Effective Date and expires forty-five (45) days thereafter.</li>

<li><u>k.</u>   <u>Land Records.</u> The Land Records of Prince George's County, Maryland.</li>
</ul>

l.      <u>Legal Requirements.</u> The rules, regulations, laws, ordinances, standards, approved plans and other requirements of the Authorities.

m.      <u>Property.</u> Approximately 8.94 acres more or less in total with Tax Account No. 15-1788512 in the Subdivision known as The Woods of Marlton, Plat 2 on Plat 147084, Parcel B. Such Property is more particularly identified amongst the land records of Prince George's County, Maryland in Plat Book NLP 147 at Plat No. 84: known as 8800 Grandhaven Avenue on that certain plat attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.

n.      <u>Purchase Price:</u> The Purchase Price of the Property will be THREE MILLION FIVE HUNDRED THOUSAND DOLLARS AND 00/100 DOLLARS ($3,500,000.00), subject to increase as set forth in Section 1(o) below.

o.      <u>Extension of Closing Date; Purchase Price Adjustment; and Increase of Deposit:</u> Buyer shall have six (6) options to extend the Closing Date for thirty (30) days per option by providing written notice to Seller at least five (5) days prior to then-scheduled Closing Date and by making a corresponding additional Deposit of $50,000 with the Escrow Agent. The Purchase Price shall increase by $50,000 with each extension (e.g., if Buyer exercises the first two options to extend Closing, the Closing Date would be eight months after the Effective Date, the Purchase Price would increase to $3,600,000.00 and the Deposit would increase to $450,000)..

2.      <u>Purchase and Sale of The Property.</u> Subject to the terms and conditions hereof, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, the Property in fee simple.

3.      <u>Deposit.</u>

a.      <u>Delivery of Deposit.</u>      Within five (5) business days after the Effective Date, Buyer shall deliver the Deposit to Escrow Agent in the form of cash, good check or wire transfer of funds (the <u>"Deposit"</u>).

b.      <u>Application of Deposit.</u> Provided that Buyer is not in default of this Agreement, Buyer shall be entitled to a credit against the Purchase Price in the amount of the Deposit (the <u>"Deposit Credit"</u>).

c.      <u>Financial Institution Holding the Deposit.</u>      Any cash held by the Escrow Agent as the Deposit shall be held by Escrow Agent in an interest-bearing account reasonably acceptable to Seller and Buyer at a bank or other financial institution reasonably acceptable to Seller and Buyer unless otherwise directed by Seller and Buyer, and the interest, if any, while held by the Escrow Agent shall be considered part of the Deposit.

d.      <u>Deposit Non-Refundable.</u> If Buyer elects to maintain this Agreement beyond the Feasibility Period, then the Deposit (as the same may be increased pursuant to the terms of this Agreement) shall be nonrefundable.

e.      <u>Release of Deposit.</u>      If this Agreement has not been sooner terminated and Buyer has not terminated this Agreement prior to expiration of the Feasibility Period, then the Deposit shall be released by Escrow Agent. No more than five (5) business days prior to Closing on the Property under this Agreement, Seller shall provide written notice to Escrow Agent and Buyer of the Closing of such acquisition and the Deposit shall be paid by Escrow Agent to Seller for use by Seller in connection with such acquisition.

f.    Agreements Regarding Escrow. In the event of any dispute between Buyer and Seller regarding the disbursement or disposition of the Deposit, or in the event Escrow Agent shall receive conflicting demands or instructions with respect thereto, Escrow Agent shall withhold such disbursement or disposition until otherwise instructed by both of the Parties or until directed by a court of competent jurisdiction. Buyer and Seller jointly and severally agree that except as provided herein, Escrow Agent shall incur no liability whatsoever in connection with its performance under this Agreement. Buyer and Seller hereby jointly and severally release and waive any claims they may have against Escrow Agent that may result from its performance of its function under this Agreement. Escrow Agent shall be liable only for loss or damage caused by any of its officer's or employee's acts of wanton or willful misconduct while performing as Escrow Agent.

This Agreement will constitute escrow instructions to the Escrow Agent in its capacity as escrow agent for the purposes of administering the Deposit and as otherwise provided in this Agreement. The Parties agree to execute for the benefit of the Escrow Agent such additional escrow instructions as the Escrow Agent may reasonably require; provided, however, that such instructions will be construed as applying only to Escrow Agent's employment as escrow agent and will not alter the terms of this Agreement.

4.    Preliminary Matters.

a. Feasibility Study.

(i)    During the Feasibility Period, and subject to the terms and conditions of this Agreement, Buyer shall have the right to investigate title and make such investigations, studies and tests with respect to the Property as Buyer deems necessary or appropriate to determine the feasibility of purchasing the Property. Buyer shall provide Seller with reasonable prior written notice of any entry onto the Property. Seller makes no representations or warranties regarding the items delivered to or obtained by Buyer.

(ii)    Unless, on or before the expiration of the Feasibility Period, Buyer has given written notice to Seller that Buyer has elected to terminate this Agreement, upon expiration of the Feasibility Period, the Deposit shall become nonrefundable except as otherwise provided herein. At any time prior to the expiration of the Feasibility Period, Buyer may, in its sole discretion, terminate this Agreement by written notice to Seller, and thereafter neither Party hereto shall have any further obligation or liability to the other with respect to the transactions contemplated by this Agreement, except for Buyer's indemnification of Seller and repair obligations pursuant to Section 4.b. hereof, which shall survive termination of this Agreement pursuant to Section 4.c. In the event of Buyer's termination prior to the expiration of the Feasibility Period, the Deposit will be returned to Buyer.

b.    Right of Entry. During the Feasibility Period, Buyer shall (i) keep the Property free of any liens or third-party claims resulting from Buyer's entry onto the Property or performance of any investigations; (ii) restore any damage to the Property or any adjacent property caused by Buyer's inspections and studies of the Property; and (iii) indemnify Seller against any liability or expense for injuries to or death of persons or damage to the Property arising from the exercise by Buyer of the rights hereunder that are not the result of any act or omission of Seller or Seller's agents, employees or contractors. Prior to entry onto the Property, Buyer shall furnish Seller with evidence of commercial general liability and property damage insurance maintained by Buyer with single occurrence coverage of at least $1,000,000 (and aggregate coverage of $2,000,000) with Seller named as an additional insured on such required commercial general liability policies.

c.    Survival. The indemnification and repair provisions of Buyer in Section 4.b. shall survive settlement or termination of this Agreement for a period of one (1) year.

d.    Seller's Materials.        Promptly, but in no event later than ten (10) days following the Effective Date of this Agreement, Seller shall deliver to Buyer the following:

(i) Notice of Final Decision from the Prince George's County District Council, dated September 29, 2011; Notification of Planning Board Action, dated December 7, 2010; and Resolution of Prince George' County Planning Board, PGCPB No. 03-192. Seller shall cooperate with Buyer to allow

Buyer to obtain, at its expense, a letter executed by the firm that prepared any survey(s), engineering report(s), or environmental report(s) provided by Seller, which letter shall permit Buyer to rely on such report as if they were prepared directly for Buyer.

      (ii)    Copies of all notices of any violation relating to the Property which is uncorrected, if any, provided, that, as of the date of this Agreement, Seller is unaware of any such Notice.

Any materials provided by Seller to Buyer pursuant to this Section shall be delivered without representation or warranty of any kind from Seller as to the completeness or accuracy of the information contained therein, and Buyer acknowledges that if it relies on such materials, it does so at its own risk and without recourse to Seller. In addition, upon any termination of this Agreement, Buyer shall return any of such materials to Seller. The provisions of this Section 4.d. shall survive any termination of this Agreement.

      e.    <u>Approved Plans.</u>  Buyer shall be responsible for obtaining final, non-appealable approval by the Planning Board of Prince George's County, Maryland of a Detailed Site Plan for the Property.

      5.    <u>Closing.</u>

      a.    <u>Closing Schedule.</u> Subject to satisfaction or Buyer's waiver of the Conditions Precedent to Closing, Closing on the Property shall take place in accordance with the following schedule:

      b.    <u>Place of Closing.</u> Closing shall occur at the offices of the Escrow Agent during normal business hours or at such other location upon which the Parties agree. The Parties agree that Closing may be consummated through escrow arrangements and delivery of documents and funds in escrow without the necessity of an in-person Closing.

      c.    <u>Payment of Purchase Price.</u> Buyer shall pay the Purchase Price to the Escrow Agent conducting Closing, for release to Seller by Federal wire transfer of U.S. funds.

      d.    <u>Delivery of Closing Documents.</u> Upon payment of the Purchase Price set forth above, Seller shall execute, acknowledge, and deliver to Buyer the following:

      (i)    A certified copy of the resolutions of Seller authorizing and approving this Agreement and the transactions contemplated herein and the execution of the Agreement and the closing documents;

      (ii)    A special warranty deed containing covenants for further assurances which conveys fee simple title to the Property in proper statutory form for recording in the Land Records;

      (iii)    A Foreign Investment in Real Property Tax Act (<u>"FIRPTA"</u>) certification in conformance with the requirements of FIRPTA; and

      (iv)    Any document reasonably requested by the Escrow Agent or Buyer's Title Company (hereinafter defined) sufficient to allow such title company to delete the "standard exceptions" in its title insurance policy for mechanic's liens and Parties in possession only.

      e.    <u>Pro-Rations.</u> Except as otherwise expressly provided in this Agreement, all real estate taxes and all other governmental assessments against the Property being purchased at Closing which are or may be payable on an annual basis, shall be adjusted and prorated between the Parties as of the day of Closing and shall thereafter be assumed and paid by Buyer, whether or not assessments have been levied as of the date of Closing. Any tax proration based on an estimate shall be subsequently readjusted upon receipt of a tax bill. The obligations under this paragraph shall survive said Closing.

f.        Closing Costs. Transfer and recordation taxes and any other recording charges due in connection with the conveyance of the Property shall be split equally between Seller and Buyer.  Buyer shall be solely responsible for payment of all other costs and expenses related to the transactions contemplated hereby, including, without limitation, all costs related to the due diligence conducted by Buyer, and all costs of, and premiums for title insurance coverage and all endorsements thereto.  Each Party will bear its own legal fees.

g.        Other Fees. Seller shall pay at Closing, without any contribution from Buyer any agricultural land, rezoning, recapture or rollback tax due in connection with the conveyance or deed for the Property being settled under any law, regulation or ordinance (or any similar tax or assessment).

6.        Title.

a.        Title Commitment. At Closing, title to the Property shall be good and marketable of record and in fact, insurable at standard rates by a nationally recognized and reputable title insurance company selected by Buyer ("Title Company"), free and clear of all liens, encumbrances, encroachments, covenants, conditions, restrictions, easements or limitations other than the Permitted Exceptions (hereinafter defined); provided however, Buyer, by continuing with this Agreement beyond the Feasibility Period, shall be deemed to have accepted that title is marketable, good of record and in fact, and insurable at regular rates by the Title Company as of the date of expiration of the Feasibility Period except for title exceptions for which Buyer raises objection and Seller elects in writing to remedy as set forth in subparagraph b. below. During the Feasibility Period, Buyer may obtain a title insurance commitment ("Title Commitment") from the Title Company and provide Seller a copy of the same prior to expiration of the Feasibility Period. "Permitted Exceptions" shall be any and all recorded encumbrances, encroachments, covenants, conditions, restrictions, easements, limitations and rightsof-way as set forth in the Title Commitment and Survey and any other matters provided for in or arising out of this Agreement, including matters known to or disclosed to Buyer during the Feasibility Period except any of the above which Buyer notes as a title exception and Seller elects in writing to remedy as set forth in subparagraph b. below; and specifically excluding any mechanic's or materialmen' s lien(s), any judgment lien(s) and any deeds of trust or mortgages unless caused by or on behalf of Buyer (collectively the "Monetary Liens").

b.        Title Objections. If Buyer determines that there are title exceptions in the Title Commitment other than those deemed to be acceptable to Buyer, Buyer shall notify Seller, in writing, of such title defects not later than forty five (45) days after the Effective Date and Seller shall have the right, within ten (10) days after receiving such notice, to elect: (i) to cure the title defect at Seller's cost and expense, or (ii) not to cure such defect. Seller's failure to notify Buyer within the stated time frame shall be deemed Seller's election not to cure. If Seller elects to cure, Seller shall do so prior to the Closing Date or, if such title defects are such that they cannot be cured prior to the Closing Date, and Seller has commenced curing such defects and thereafter diligently proceeds to perfect such cure, then the Closing Date shall be extended until such cure is perfected, but in no event beyond forty-five (45) days from the receipt of Buyer's written title defects objection, unless agreed to in writing by Purchaser) (the "Extended Cure Period"), . If Seller elects not to cure or is deemed to elect not to cure, then Buyer shall be entitled to terminate this Agreement no later than the earlier of (i) five (5) days of Seller's election (or deemed election) not to cure or (ii) expiration of the Feasibility Period, and upon such termination, Buyer shall be entitled to the return of the Deposit. If Buyer delivers no notice, then Buyer shall have elected not to terminate this Agreement and all title exceptions or objections of Buyer which Seller has elected not to cure shall be deemed Permitted Exceptions. If Seller elects to cure but fails to cure prior to the Closing Date, as the same may be extended with the Extended Cure Period, if applicable, then Buyer shall be entitled to terminate this Agreement prior to the Closing Date, as the same may be extended with the Extended Cure Period, if applicable, and Buyer shall be entitled to the prompt return of the Deposit. Buyer shall not be required to object to Monetary Liens created by Seller which Seller agrees will be released by Seller at Seller's expense for the Property purchased at Closing; provided however, mechanic's liens may be bonded off by Seller in lieu of releasing.

7.        Condemnation. If after the Effective Date and prior to Closing, all or any Material (defined below in this Section) part of the Property is taken or threatened to be taken by eminent domain or

condemnation, either Buyer or Seller may elect to terminate this Agreement, in which event Buyer shall be entitled to a refund of the applicable Deposit. In the event such condemnation is not Material, then Buyer shall accept such title to the Property as Seller can deliver, in which case Seller shall pay over or assign to Buyer all rights and proceeds arising by reason of such taking (less any collection costs incurred by Seller in connection therewith and any costs and expenses incurred by Seller to restore the Property) and Purchaser shall pay the Purchase Price at the Closing without reduction. For purposes of this Section 7, the term "Material" shall mean a condemnation involving (i) 10% or more of the land comprising the Property; or (ii) all or a material portion of access to the Property.

8.      Conditions Precedent to Closing.

a.      Title. Title to the Property to be purchased at Closing shall be as set forth in Section 6, subject to the Permitted Exceptions, including any additional matters in this Agreement that may become Permitted Exceptions.

b.      Representations. Each of Seller's representations and warranties set forth in Section 14 shall be materially true as of the date of Closing with respect to the Property to be purchased at a Closing.

c.      Litigation. There is no litigation filed against Seller or against the Property to be purchased at a Closing that, if determined adversely, would materially and adversely affect title to such the Property.

If Buyer believes that one or more Conditions Precedent to Closing have not been satisfied on a Closing Date, then Buyer shall notify Seller in writing and shall state in detail each such condition that is not satisfied and each action necessary to satisfy the unsatisfied condition. Further, should any of the Conditions Precedent to Closing not be satisfied by the applicable Closing Date, Buyer, at its sole and absolute discretion, may (i) waive such unsatisfied Condition and close on the Property as contemplated herein,

9.      Risk of Loss. The Property shall be held at the risk of Seller until Closing thereon.

10.      Possession. At Closing, the Property shall not be subject to any leases or licenses, and the Property shall be free of any tenants, licensees or Parties in possession, but subject to the Permitted Exceptions.

11.      Default.

a.      Buyer Default. Subject to the provisions of Subsection 11.c. below, in the event of a default by Buyer hereunder, Seller shall have the right to either (a) terminate this Agreement and to receive and/or retain the Deposit, or (b) seek specific performance of this Agreement. The foregoing limitation on remedies notwithstanding, Seller shall be entitled to enforce any indemnification or repair obligations under this Agreement against Buyer that expressly survive the termination of this Agreement.

b.      Seller Default. Subject to the provisions of Sections 11.c. and d. below, in the event of a default by Seller hereunder, Buyer shall be entitled to (i) waive such default or breach in writing, and proceed with the Closing of the Property pursuant to the remaining terms and conditions of this Agreement; or (ii) terminate this Agreement; or (iii) pursue an action for specific performance, which action shall be commenced no later than ninety (90) days after Seller's default and expiration of any applicable cure period. In the event Buyer shall elect to terminate this Agreement pursuant to item (ii), or this Agreement shall otherwise terminate in accordance with the provisions hereof, the Deposit shall be returned to Buyer within fifteen (15) days and thereafter, each Party shall be released from any further obligations or liabilities other than those that expressly survive termination of this Agreement. In the event action for specific performance is not available to Buyer due to circumstances from an act or inaction by Seller, then Buyer shall have the right to seek actual damages in lieu of specific performance. Except as otherwise expressly set forth herein, Buyer waives any and all other remedies and rights, including any rights or claims for punitive damages.

        c.     Cure Period. Notwithstanding the provisions of Subsections 11.a. and 11.b. above (or any other provision of this Agreement), no default by either Party hereto shall result in a termination or limitation of any rights of such Party hereunder unless and until the other Party shall have notified the defaulting Party in writing of said default, and the defaulting Party shall have failed to cure said default within thirty (30) days after the receipt of said written notice (provided Buyer's cure period for failure to Close shall be limited to ten (10) days and if Buyer's fails to Close after all options to extend the Closing Date under Section 1(o) have been utilized, the Deposit and the Purchase Price shall automatically increase by $200,000 as of the then-scheduled Closing Date).

        12.     Notices. Any notice to be given in connection with this Agreement shall be in writing and shall be deemed received (a) on the date delivered if hand delivered, (b) two (2) business days after postmark if sent postage prepaid by certified or registered mail, return receipt requested, (c) one (1) business day after sent by Federal Express or UPS marked next day delivery, or (d) upon delivery if sent by electronic mail (with confirmation of delivery). Notices to the Parties shall be sent to their addresses set forth below. Any Party may, by written notice to the others, change its address to which notices are to be sent. The Parties shall copy Escrow Agent on all notices sent hereunder relating to the Deposit, but failure to notify Escrow Agent shall not be deemed a failure of notice to a Party to whom notice has been given. Refusal to accept delivery of any notice shall be deemed receipt hereunder. Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice. Notices given by counsel to either Party shall be deemed given by that Party.

| Buyer's Address: | Werrlein Properties Limited Liability Company |
|---|---|
| | 522 Defense Highway |
| | Annapolis, Maryland 21401 |
| | Attn: Karl Granzow |
| | Phone: (443) 5101274 |
| | Email: karl@werrleinproperties.com |
| | |
| Escrow Agent's Address: | Monarch Title, Inc. |
| | 4313 Hamilton Street |
| | Hyattsville, MD 20781 |
| | Attn: Ben Horton, Esquire |
| | Phone: (202) 5463100 |
| | Email: bhorton@monarchtitle.net |
| | |
| Seller's Address: | OB, LLC |
| | 1763 Columbia Road, NW, |
| | Washington, DC 20010 |
| | Attn: Erik D. Bolog |
| | Email: Erik.D.Bolog@gmail.com |

        13.     Brokers. Each Party represents and warrants to the other that it has not used the services of any real estate agent, broker or finder with respect to the transactions contemplated hereby. Each Party agrees to indemnify, defend and hold harmless the other against and from any inaccuracy in such Party's representation under this Section. This indemnification shall survive (i) each Closing hereunder and delivery of the Deed, and shall not merge therein, and (ii) any earlier termination of this Agreement.

        14.     Representations and Warranties.

        a.     Mutual Representations. To induce each other to enter into this Agreement, each party represents and warrants to the other that (i) it has been duly authorized and empowered to enter into this Agreement and to perform fully its obligations hereunder, (ii) such obligations constitute the valid and binding obligations of such Party, enforceable in accordance with their terms, and (iii) that no further consents of any

other person, entity, public body or court are required in connection with this Agreement and the performance of all obligations hereunder.

        b.        Seller's Warranties and Representations. To induce Buyer to enter into this Agreement, Seller represents and warrants to Buyer:

        (i)        Litigation. There is no litigation, arbitration or proceeding pending, or to Seller's actual knowledge, threatened, in writing before any court or administrative agency or to Seller's actual knowledge there is not any other legal action against Seller that adversely affects the Property, nor is there any judgment against any part of the Property that will be a lien on the Property after Closing.

        (ii)        No Breach. The execution and delivery of this Agreement by Seller, the execution and delivery of every other document and instrument delivered pursuant hereto by or on behalf of Seller, and the consummation of the transactions contemplated hereby does not and will not, in any material respect, (A) constitute or result in the breach of or default under any agreement to which Seller is a Party and which adversely affects the Property; (B) constitute or result in a material violation of any law, order, decree, or injunction with respect to which the Seller or the Property are bound; or (C) cause or entitle any Party to have a right to accelerate or declare a default under any agreement to which Seller is a Party and which adversely affects the Property.

        (iii)        No Contracts. Seller has not entered into any other contracts, agreements or understandings, verbal or written, for the sale of the Property that remain effective.

        (iv)        Violations. Seller has not received a written violation from any Authority with respect to the Property that is material and will remain uncured or that prevents Buyer from obtaining a building permit to construct its townhome product on the Property to be purchased, excluding, however, any violation caused by, through or under Buyer ("Violation Notice").

        (v)        Organization. Seller is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware;  has the authority to sell the Property; and will prior to Closing take all steps necessary to reinstate its authority to transact business in the State of Maryland.

        (vi)        Commitments. Other than as set forth in the Documents or as permitted pursuant to, or set forth in, this Agreement or recorded among the Land Records or disclosed to Buyer during the Feasibility Period, Seller has not made and has no knowledge of any commitments to any Authority, school board, church or other religious body, or to any other organization, group or individual affecting the Property which would impose any obligations upon Buyer as owner of the Property in a material respect to make any contributions of money or land or to install or maintain any improvements, or which would interfere with Buyer's ability to use, develop or improve the Property as herein contemplated (including any agreements or understandings to annex the Property to any homeowners' association governing any Property or subdivision adjacent to or in the vicinity of the Property).

        (vii)        Owner of The Property. Seller is the owner of the Property pursuant to this Agreement with full legal power to sell same.

        (viii)        No Annexation or Condemnation. To Seller's actual knowledge, there are no pending or proposed annexation or condemnation proceedings or purchase in lieu thereof affecting, or which may materially adversely affect the Property that are being purchased at an applicable Closing.

        (ix)        No Special Assessments. To Seller's actual knowledge, there are no pending or proposed special assessments affecting or which may adversely affect the Property unless otherwise set forth in this Agreement.

(x) <u>Non-Foreign Person.</u> Seller is not a "foreign person" as contemplated in Section 1445 of the Internal Revenue Code, as amended. Seller agrees to execute at settlement an affidavit in the form required by the Internal Revenue Service to exempt Buyer from any withholding requirements under Section 1445.

(xi) <u>Charges.</u> Seller will, during the term of this Agreement, keep any mortgage(s) granted by Seller against the Property current and not in default, and pay taxes and other public charges against said the Property so as to avoid forfeiture of Buyer's rights under this Agreement.

(xii) <u>Contractors.</u> All contractors, subcontractors, laborers and materialmen performing work upon, or furnishing labor or materials to improve or benefit, the Property at Seller's request have been, or will in the ordinary course of business be, paid in full by Seller unless Seller is disputing the payments thereto. Accordingly, Seller hereby agrees to indemnify and hold Buyer harmless from any mechanics' or materialmen's liens against any of the Property for work performed or materials furnished by, or at the request of, Seller in accordance with the provisions of this Agreement or the Development Agreement.

(xiii) <u>Dedications.</u> To Seller's actual knowledge, there are no necessary dedications to public use with respect to the Property shown on or required by the subdivision plats for the Property to be purchased at the applicable Closing have been or will be made to the applicable Authorities within such time as required in order that Buyer is not delayed in obtaining building permits for the Property.

(xiv) <u>Documents.</u> To Seller's actual knowledge, the Documents delivered by Seller to Buyer are in the same form as were received by Seller.

(xv) <u>No Pending Proceedings.</u> No actions, suits or other legal proceedings have been instituted or threatened against or affecting the Seller or the Property at law or in equity or before any Authority, and Seller has no knowledge that any such notices are forthcoming, except that certain letter from Shipley & Horne, P.A., dated October 13, 2023 (copy to be provided with Seller's Materials).

(xvi) <u>No Third-Party Rights.</u> No tenant or other third party has any agreement, option, or right of first refusal, to purchase the Property to be purchased by Buyer or any part thereof, nor does any other party have any occupancy rights with respect to the Property to be purchased by Buyer.

(xvii) <u>No Hazardous Materials.</u> Seller, and to Seller's actual knowledge, its agents, tenants or licensees have not placed within the Property, and to Seller's knowledge, except as disclosed in the Seller's Materials, the Property (including the land, surface water, ground water, and any improvements) is free of, any material amounts of waste or debris, and Seller, its agents, employees, members and managers have not placed on the Property, and to the knowledge of the Seller, except as disclosed in the Seller's Materials, the Property is free of all contamination, including the following (the <u>"Hazardous Materials"</u>): (i) any "Hazardous Waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder; (ii) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder; (iii) any substance the presence of which on the Property is prohibited by any other federal, state, or local law applicable to the Property; and (iv) underground storage tanks. To Seller's knowledge, no landfill has occurred within the Property and no debris has been buried or placed on any portion of the Property.

(xviii) <u>No Flood Plains and Wetlands.</u> No portion of the Property is located in any flood zone, flood hazard area, flood plain or similarly designated zone on the applicable FEMA maps or in a "wetlands" area as defined by any Authority.

(xix) <u>No Historic Designation or Historic Use.</u> There is no actual or pending designation of all or any portion of the Property, or of the area or district in which the Property is located, as

a historic district, site, building, battlefield, structure, object or other resource on the National Register of Historic Places or any other similar list or survey maintained by any Authority.

(xx)     No Cemeteries. To Seller's actual knowledge, the Property does not contain any cemeteries or graveyards, and the Property is not subject to any easements for access to any cemeteries or graveyards.

(xxi)     Access to The Property. The right of ingress to and egress from the Property, through direct access to a dedicated public road or to a dedicated private road with direct access to a public road, is or will at Closing be immediately available to the applicable The Property.

(xxii)     [INTENTIONALLY LEFT BLANK].

(xxiii)     No Bankruptcy. Seller is not bankrupt or insolvent under any applicable federal or state standard, nor has filed for protection or relief under any applicable bankruptcy or creditor protection statute nor has any such Party been threatened by creditors with an involuntary application of any applicable bankruptcy or creditor protection statute. Seller is not entering into the transactions described in this Agreement with intent to defraud any creditor or to prefer the rights of one creditor over any other. Seller and Buyer have negotiated this Agreement at arms-length and the consideration to be paid represents fair value for the assets to be transferred.

(xxiv)     No Mining. To the best of Seller's knowledge, the Property has not been used by Seller for purposes of mining or explorations for mineral, chemicals or other natural resources.

(xxv)     Further Actions. Seller will not take or cause to be taken any action, or fail to perform any obligation, which would cause any of the foregoing representations or warranties to be untrue as of the Closing. Seller shall immediately notify the Buyer, in writing, of any event or condition known to Seller which occurs prior to Closing hereunder, which causes a change in the facts relating to, or the truth of, any of the above representations or warranties.

(xxvi)     Current Zoning.   To Seller's knowledge, no petition, application or proceeding is pending or threatened to alter the zoning of the Property. Except for the Permitted Exceptions, Seller has made no commitments relative to the Property, whether verbally or in writing, to any Authority or any neighboring property owner, which would be binding on Buyer after the Closing.

c.     Survival. The representations and warranties of the Seller set forth herein shall be materially true as of the Effective Date in all material respects and the date of Closing. All representations and warranties contained in this Agreement shall survive Closing for six (6) months. Acceptance of possession of the Property by Buyer at Closing shall not be deemed a waiver of Seller's obligation to deliver the Property in the conditions set forth herein..

d.     Waiver of Representations. If prior to the expiration of the Feasibility Period or the date of any Closing hereunder, Buyer obtains actual knowledge that any of Seller's representations or warranties set forth in this Section 14 or elsewhere in this Agreement are untrue in any material respect, and Buyer continues with the Agreement beyond the Feasibility Period (if such actual knowledge is obtained prior to the expiration of the Feasibility Period) or prior to a Closing (if such actual knowledge is obtained prior to such Closing), then the breach by Seller of the representations and warranties as to which Buyer shall have such actual knowledge shall be deemed waived by Buyer.

e.     Correction of Violation Notice. If Seller receives a Violation Notice, Seller shall promptly deliver a copy of the Violation Notice to Buyer and Seller shall cure any such violation within a reasonable amount of time but in any event, prior to Closing.

15.    Waiver of Jury Trial. SELLER AND BUYER JOINTLY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH SELLER AND BUYER MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS AGREEMENT. This waiver is knowingly, willingly and voluntarily made by Seller and Buyer, each of whom hereby acknowledges that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. Seller and Buyer each further represents that it has been represented in the signing of this Agreement and in the making of this waiver by independent legal counsel, selected of its own free and that it has had the opportunity to discuss this waiver with counsel.

16.    Ancillary Matters.

a.    AS-IS Condition. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE PARTIES ACKNOWLEDGE THAT THE SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY ASPECT OF THE PROPERTY, AND THE BUYER IS ACQUIRING THE PROPERTY IN "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION ON THE DATE SUCH THE PROPERTY ARE CONVEYED TO THE BUYER. THE TERMS OF THIS SECTION 16.a SHALL SURVIVE CLOSING OR THE EARLIER TERMINATION OF THIS AGREEMENT.

b.    Application for Permits. Seller and Buyer shall each sign applications when reasonably necessary (at no cost to such Party) in connection with permits and any other licenses or instruments reasonably required by the other in connection with the improvement and development of the Property. The covenants contained in this section shall survive Closing or termination of this Agreement.

c.    Cooperation.

(i)    [INTENTIONALLY LEFT BLANK].

(ii)    Buyer and Seller shall reasonably cooperate with each other or other Parties, upon request, to assist in obtaining the approval of the Authorities for any development related Documents to be sought or submitted after the Effective Date, including but not limited to, executing any plats, plans, subdivision documents, applications and easements for the Property reasonably requested. The covenants contained in this section shall survive each Closing or any partial termination of this Agreement.

(iii)    Seller will, prior to Closing, cooperate with Buyer in a reasonable manner to facilitate the approval of the Residences by Prince George's County. Seller agrees that, as the title owner of the Property, it will join in any and all applications to be signed in connection with requests for utility permits, entrance permits, site plans and or any other authorizations Buyer reasonably deems necessary to develop the Property or construct the Residences thereon, and it will, in good faith, at Buyer's cost, assist Buyer in obtaining such authorizations.

17.    General.

a.    Entire Agreement. This Agreement constitutes the final and entire Agreement between the Parties relating to the subject matter herein and they shall not be bound by any terms, covenants, conditions, representations or warranties not expressly contained herein. This Agreement may not be amended except by written instrument executed by both Parties.

b.    Partial Invalidity. If any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

       c.       <u>Time of the Essence.</u> Subject to the cure periods set forth herein, time is of the essence of this Agreement and the performance of the terms and conditions hereof.

       d.       <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective legal representatives, successors and assigns. Neither Party shall assign this Agreement or its rights hereunder to any other person without the non-assigning Party's prior written approval, which approval shall not be unreasonably withheld, conditioned, or delayed.

       e.       <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one end the same instrument. Furthermore, this Agreement may be circulated to the respective Parties for execution by electronic transmission and the electronic copy of this Agreement shall be sufficient to bind the Parties to the terms, conditions and provisions hereof. The signature of each respective Party need not appear on the same counterpart of this Agreement provided that each Party has fully executed a counterpart of this Agreement.

       f.       <u>Headings.</u>    The headings of the Sections, Subsections, Paragraphs and Subparagraphs hereof are provided for convenience of reference only and shall not be considered in construing their contents.

       g.       <u>Exhibits.</u> Each writing or plat or plan referred to herein as being attached hereto as an exhibit or otherwise designated herein as an exhibit is incorporated herein by reference and made a part hereof.

       h.       <u>Time Periods.</u> Any and all references in this Agreement to time periods which are specified by reference to a certain number of days refer to calendar days, unless "business days" is otherwise expressly provided. Therefore, if (a) the last date by which a Closing is permitted to occur hereunder, or (b) any date by which a Party is required to provide the other Party with notice hereunder, occurs on a Saturday or a Sunday or a banking holiday in the jurisdiction where the Property is located, then and in any of such events, such applicable date shall be deemed to occur, for all purposes of this Agreement, on that calendar day which is the next, succeeding day, which is not a Saturday, Sunday or banking holiday.

       i.       <u>No Partnership.</u> Nothing in this Agreement shall be deemed in any way to create between the Buyer and Seller any relationship of partnership, joint venture or association, and they each disclaim the existence thereof.

       j.       <u>Waivers.</u> No Party shall be deemed to have waived the exercise of any right which it holds hereunder unless such waiver is made expressly and in writing (and no delay or omission by any Party hereto in exercising any such right shall be deemed a waiver of its future exercise). No such waiver made as to any instance involving the exercise of any such right shall be deemed a waiver as to any other such instance, or any other such right.

       k.       <u>Choice of Law.</u> This Agreement shall be given effect and construed by application of the law of the State of Maryland and in the event any legal proceedings are brought in connection with this Agreement, the Parties agree that the venue therefor shall be only state courts located in Prince George's County, Maryland and federal courts in the State of Maryland.

<u>Attorneys' Fees.</u> In the event of any legal action between the Parties regarding this Agreement or the Property, the prevailing Party shall be entitled to payment by the non-prevailing Party of its reasonable attorneys' fees and litigation expenses as determined in the course of the proceeding. This provision shall survive termination or Closing under this Agreement.

       m.       <u>Survival.</u> All representations, warranties, covenants and indemnities of the Parties set forth in this Agreement shall survive the Closings (and the delivery and recordation of the Deeds), and shall not be merged therein, provided that the representations and warranties made by Seller and Buyer hereof shall survive Closing of this transaction only for a period of six (6) months after the Closing Date (and shall expire

unless written notice of a breach of such representations and warranties is provided by the non-breaching Party to the breaching Party prior to the expiration of such one (1) year period).

18.    Disclosures.

a.    Disclosure-Military Installations. Section 14117(k) of the Real Property Article of Annotated Code of Maryland requires that Buyer receive the following information:

Buyer is advised that the Property may be located near a military installation that conducts flight operations, munitions testing, or military operations that may result in high noise levels.

b.    Disclosure-Subdivision. Section 10701 of the Real Property Article of Annotated Code of Maryland requires that Buyer receive the following information:

The subdivision of land to be created by this transaction has not been approved by the Maryland-National Capital Park and Planning Commission, the Department of Health and Mental Hygiene, or any other agency of the State or county. The approval of one or more of these agencies may be necessary before any building permit is issued.

c.    Prince George's County Certification. Seller certifies that Seller has no knowledge of any published preliminary or adopted land use plan (or adopted Zoning Map Amendment) which may result in condemnation or taking of any part of Seller's property (including the Property). Buyer acknowledges that Buyer is aware that the information relative to (1) government plans for land use, roads, highways, parks, transportation, etc., and (2) rezoning is available for inspection at the County Administration Building, Upper Marlboro, Maryland, at www.PGAtlas.com and http://www.pgplanning.org/Planning_Home. Buyer further acknowledges and is strongly encouraged to take advantage of its opportunity to examine the above referenced information and any other information pertaining to the Property that is relevant to Buyer prior to signing or entering into this Agreement.

d.    Deferred Street Improvements Costs and Special Assessment. Pursuant to Section 2-162.01(b) of the Prince George's County Code, the following notice is given: "Any contract for the sale of residential real property located in this County, for which the Department of Public Works and Transportation has recorded a covenant deferring future costs for street improvements for which the purchaser may be liable, shall contain disclosure of this condition by the Seller (owner)". The Seller has no information regarding such a covenant.

e.    Disclosure-Critical Area Notice. Notice To Buyer Concerning the Chesapeake And Atlantic Coastal Bays Critical Area.

BUYER IS ADVISED THAT ALL OR A PORTION OF THE PROPERTY MAY BE LOCATED IN THE "CRITICAL AREA" OF THE CHESAPEAKE AND ATLANTIC COASTAL BAYS, AND THAT ADDITIONAL ZONING, LAND USE, AND RESOURCE PROTECTION REGULATIONS APPLY IN THIS AREA. THE "CRITICAL AREA" GENERALLY CONSISTS OF ALL LAND AND WATER AREAS WITHIN 1,000 FEET BEYOND THE LANDWARD BOUNDARIES OF STATE OR PRIVATE WETLANDS, THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES. THE "CRITICAL AREA" ALSO INCLUDES THE WATERS OF AND LANDS UNDER THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES TO THE HEAD OF TIDE. FOR INFORMATION AS TO WHETHER THE PROPERTY IS LOCATED WITHIN THE CRITICAL AREA, BUYER MAY CONTACT THE LOCAL DEPARTMENT OF PLANNING AND ZONING, WHICH MAINTAINS MAPS SHOWING THE EXTENT OF THE CRITICAL AREA IN THE JURISDICTION. ALLEGANY, CARROLL, FREDERICK, GARRETT, HOWARD, MONTGOMERY, AND

WASHINGTON COUNTIES DO NOT INCLUDE LAND LOCATED IN THE
CRITICAL AREA

IN WITNESS WHEREOF, the Parties hereto have executed under seal this Agreement as of the
Effective Date.


ATTEST/WITNESS:                    BUYER:

                                   WERRLEIN PROPERTIES LIMITED LIABILITY
                                   COMPANY, a Maryland limited liability company

                                   By: _karl Granzow_____

                                   Name: Karl Granzow_____

                                   Title: Project Manager_____

                                   Date: 12/19/2023


ATTEST/WITNESS:                    SELLER:

                                   OB LLC, a Delaware limited liability
                                   company

                                   By: _____
                                   Name: _____
                                   Title: _____
                                   Date:

WASHINGTON COUNTIES DO NOT INCLUDE LAND LOCATED IN THE CRITICAL AREA

IN WITNESS WHEREOF, the Parties hereto have executed under seal this Agreement as of the Effective Date.

ATTEST/WITNESS:                     BUYER:

                                    WERRLEIN PROPERTIES LIMITED LIABILITY
                                    COMPANY, a Maryland limited liability company

                                    By:  _____
                                    Name: _____
                                    Title: _____
                                    Date:

ATTEST/WITNESS:                     SELLER:

                                    OB LLC, a Delaware limited liability
                                    company

                                    By: _Erik D. Bolog_____
                                    Name: _Erik D. Bolog_____
                                    Title: _Managing Member_____
                                    Date: 12/14/2023

Purchase and Sale Agreement
Page 14 of 14