**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

In re                                          Case No. 25-20897-MCR

OB LLC                                         Chapter 11

    Debtor.
_____/

**OB LLC'S ~~FIRST~~ SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

Comes now OB LLC ("OB" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following ~~first~~ second amended plan of reorganization (the "Plan") herein:

**Background for Cases Filed Under Subchapter V**

a. **Description and History of the Debtor's Business**

OB was formed as a Delaware limited liability company, on October 4, 2011, for purposes of acquiring the real property commonly known as 8800 Grandhaven Avenue in Upper Marlboro, Maryland (the "Real Estate"). The Debtor proceeded to close on an acquisition of the Real Estate on October 19, 2011 and has held the parcel of unimproved land at all times since.

The Real Estate was originally acquired with financing from American Bank, which furnished a loan of $2.5 million at closing. The loan was—and continues to be—secured by a deed of trust on the Real Estate. When American Bank was acquired by a third party in or about 2015, Democracy Capital Corporation ("DCC") acquired the subject promissory note and deed of trust. Various extensions and changes in terms have since been negotiated and implemented, with DCC remaining the secured creditor of OB to and through the present day.

The Debtor has long looked to sell the Real Estate and, in December 2023, entered into a sales contract with Werrlein Properties Limited Liability Company ("WPLLC") to do so for $3.5 million. Various disputes, however, subsequently arose between the Debtor and DCC, concerning the sum due and owing on the promissory note secured by the Real Estate, thereby frustrating a closing of the proposed sale to WPLLC.

Those disputes culminated in DCC scheduling a foreclosure of the real estate for November 19, 2025. Shortly before the scheduled auction, OB filed a voluntary petition for chapter 11 relief and thereby commenced this case. OB's designs in so doing, transparently, were to (i) avoid a loss of the asset to foreclosure; (ii) create a mechanism through which the dispute over the size of DCC's claim may be finally adjudicated; and (iii) utilize the provisions of Title 11 of the United States Code (the "Bankruptcy Code") to facilitate a sale of the Real Estate while the claim dispute plays out.

Two days after entering bankruptcy, OB filed a motion to sell the Real Estate, to WPLLC, for the increased sum of $4 million. Correlative therewith, OB secured the written commitment of

1

WPLLC to an amended purchase agreement, noting the increased sales price and providing for the modification of other critical terms so as to facilitate a sale through the bankruptcy process.

 **b. Liquidation Analysis & Secured Claim Valuation**

  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor proposes, herein, to pay all claims, in full, with interest (where applicable).

  Accordingly, while there may be an interesting debate as to whether a chapter 7 trustee could fetch a similarly-lucrative distribution to creditors (while eating into available funds through the taking of a trustee's commission and the incurrence of added legal fees), such is also a moot point. Creditors cannot receive more than 100 cents on the dollar and, accordingly, will bode no worse under this Plan than they would in chapter 7.

  Critically, the sole secured claim—excepting the possibility of *de minimis* real estate taxes—is that of DCC. The Debtor believes this claim is valued at approximately $2.7 million. Upon information and belief, DCC believes the claim to be closer to $3.~~6~~9 million. Yet, under either eventuality, the funds available for distribution to creditors hereunder are more than sufficient to pay this claim in full.

 **c. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

  The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Under this Plan, all creditors will be paid, in full, on the date on which their claims become allowed claims (or, if such occurred prior to closing on the sale of the Real Estate, shortly following said closing). The monies to make such payments will come from the sale of the Real Estate, which will occur on the effective date of this Plan. Sale proceeds will be held by the Debtor, in a debtor-in-possession bank account, unless and until all claims are fully retired (at which time excess monies will be distributed to equity).

  **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1. Summary**

  This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

  The Plan provides for:  2 classes of secured claims; and

          1 class of an equity holder.

  The Plan also provides for the payment of administrative priority claims other than those placed in classes.

  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

| Article 2. | Classification of Claims and Interests | |
|---|---|---|
| Section 2.01 | Class 1 | The secured disputed claim of DCC. |
| Section 2.02 | Class 2 | The secured claim(s) of any taxing authorities. |
| Section 2.03 | Class 3 | The Debtor's equity interests. |
| Article 3. | Treatment of Administrative Expense Claims and Court Costs | |
| Section 3.01 | Unclassified Claims | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| Section 3.02 | Administrative Expense Claims | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the later of (i) the fifth calendar day after the Debtor closes on a sale of the Real Estate; or (ii) the fifth calendar say after such claim becomes an allowed claim. All professionals. including the Debtor's counsel and the Subchapter V Trustee, will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the Effective Date. Post-petition, the Subchapter V Trustee shall continue to apply for all fees in accordance with Sections 330 and 331. |
| Section 3.03 | Priority Tax Claims | Each holder of a priority tax claim will be paid in full at the closing of the Debtor's sale of the Real Estate. It is reasonably believed that no such claims exist in this case. |
| Section 3.04 | Statutory Fees | There are no statutory fees due in this case. |
| Section 3.05 | Prospective Quarterly Fees | There are no prospective quarterly fees that will be due in this case. |
| Article 4. | Treatment of Claims and Interest Under the Plan | |

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – DCC | Impaired | Class 1 consists of the secured, disputed claim of DCC. DCC will retain its lien on the Real Estate until such a time as the Debtor closes on a sale of the Real Estate, at which time (i) DCC will be paid the sum of $~~2.7~~3.5 million at |

3

| | | |
|---|---|---|
| | | closing; ~~and~~ (ii) DCC shall then have a lien on the full balance of proceeds (not to exceed the ultimately-adjudicated sum of DCC's claim), to be placed in the Debtor's debtor-in-possession bank account, pending a final adjudication of the allowed claim of DCC<span style="color:red">; and (iii) the Debtor shall have the right to recover, from DCC, any overpayment, based on the ultimately-adjudicated sum of DCC's claim</span>~~.~~ |
| Class 2 – Taxing Authority Claims | Impaired (if extant) | This class consists of the secured claim of any taxing authority. It is not believed any such claim(s) exist however, to the extent any such claim(s) is/are extant, the same will be paid, in full, at closing on the Debtor's closing of a sale of the Real Estate. |
| Class 3 – Equity Interest | Unimpaired | The equity interest of the Debtor shall retain his membership in OB. |

**Article 5.    Allowance and Disallowance of Claims**

**Section 5.01    Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02    Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order, *except* $~~2.7~~3.5 million shall be paid toward the disputed Class 1 claim at closing on the sale of the Real Estate, ~~insofar as there does not exist any dispute but that the Class 1 claim is entitled to at least $2.7 million and all parties will benefit from arresting the accrual of interest (if any) upon said claim~~subject to the Debtor's clawback rights.

**Section 5.03    Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Section 5.04    Timing for Dispute of Claims**. The Debtor will file objections to any disputed claims (except those deemed disputed on the Debtor's schedules where no proof of claim was thereafter filed) within six (6) calendar months of the Effective Date, *except* any objection to the claim of any governmental tax creditor may be filed at any time within ninety (90) days of the date

4

on which such claim is filed. The Debtor ~~reasonably anticipates disputing~~disputes the claim of DCC ~~if DCC files a proof of claim for a sum greater than $2.7 million~~.

**Article 6.      Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01   Assumption.** The Debtor assumes the sales contract with WPLLC, as noted on line 2.1 of Schedule G, subject to the amendment thereof to be entered into by OB upon receiving leave of court. ~~For want of ambiguity, the Debtor does *not* assume this contract if the amendment thereto is not approved by this Honorable Court.~~

**Section 6.02   Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7.      Means for Implementation of the Plan**

Within thirty (30) calendar days of the Effective Date, the Debtor will close on a sale of the Real Estate, for $4 million, to WPLLC.

**Article 8.      General Provisions**

**Section 8.01   Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02   Effective Date.** The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Section 8.03   Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04   Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05   Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under chapter 7 of the Bankruptcy Code), as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest. A default shall also be deemed to occur if the Debtor materially violates any substantive provision of this Plan.

**Section 8.06   Disbursing Agent.** There shall be no disbursing agent hereunder and the Debtor will make all payments to creditors directly, by check or, where available, direct deposit or auto-debit.

**Section 8.07   Stamp/Conveyance Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, the Debtor's sale of the Real Estate under this Plan shall be free of any stamp or conveyance tax, as shall any deed of trust or mortgage recorded in a substantially contemporaneous manner therewith and arising on account thereof, with it being the express intent of the Debtor—under this Plan—that any lender, facilitating the sale of the Real Estate through the financing thereof, not be required to pay a stamp, recordation or other tax on account of the perfection of a resulting deed of trust.

**Section 8.08   Captions.** The headings contained in this Plan are for convenience of reference only, and do not affect the meaning or interpretation of this Plan.

**Section 8.09   Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.10   Escheat.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder.  Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such time as said class is paid in full; (ii) second paid to each junior class, until all classes are paid in full; and (iii) then, if and when each class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**Section 8.11   Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Maryland shall retain jurisdiction of this chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.12   Modifications.** Modification of this Plan shall be governed by Section 1193 of the Bankruptcy Code.

**Section 8.13   Professional Fees.** Per Section 3.02 of this Plan, the Debtor must seek the approval of this Honorable Court prior to paying any professional fees incurred during the pendency of this case. Commencing on the Effective Date, however, the Debtor shall be free to pay any post-confirmation fees incurred by counsel, or other professionals (excepting the Subchapter V trustee), without first obtaining leave of court, and such professionals shall thereafter be excused from any requirement to seek leave of court.

**Section 8.14   Progress Reports.** The Debtor shall comply with Local Rule 3022-1(a)(2) in making semi-annual progress reports until such a time as a final decree is entered.

~~Section 8.13~~

**Article 9.   Discharge**

**Section 9.01   Discharge.** The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. § 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

(a) If the Plan is confirmed under 11 U.S.C. § 1191 as a consensual plan, the Debtor shall receive a discharge on the effective date of the Plan; or

(b) If the Plan is confirmed under 11 U.S.C. § 1191(b), the Bankruptcy Court shall grant a discharge upon the completion of the plan payments being made in the 60th month succeeding the Effective Date.

**Section 9.02   Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers.

**Article 10.   Notice of Substantial Consumation**

**Section 10.01** If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

THE BELMONT FIRM
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
mac@dcbankruptcy.com
*Counsel for the Debtor*