# EXHIBIT 3

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 10-19-2011 | 04-19-2015 | | | | D | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: OB LLC (TIN: )
115 Grafton Street
Chevy Chase, MD 20815

Lender: American Bank
8001 Edmonston Road, Suite 100
Greenbelt, MD 20770
(301) 572-3740

Principal Amount: $2,500,000.00  Date of Agreement: October 19, 2011

**DESCRIPTION OF EXISTING INDEBTEDNESS.** The Borrower is justly indebted to Lender as evidenced by the Promissory Note dated October 19, 2011 between the Borrower and Lender in the original amount of $2,500,000.00 with an original maturity date of April 13, 2013, which maturity date was hereby extended to April 19, 2014 pursuant to a Change in Terms Agreement dated April 13, 2013, together with all modifications of and renewals, replacements and substitutions for the promissory note or agreement.

**DESCRIPTION OF COLLATERAL.**
(A) A Purchase Money Deed of Trust dated October 19, 2011, to a trustee in favor of Lender on real property located in Prince George's County, State of Maryland. The Real Property and or its address is commonly known as 6800 Grandhaven Avenue, Upper Marlboro, MD 20772.

(B) Interest in investment located at 5225 Pooks Hill Road, Unit 1627N, Bethesda, MD 20852.

(C) deposit account #6000353521 described in an assignment deposit account agreement dated October 19, 2011.

**DESCRIPTION OF CHANGE IN TERMS.** The Borrower and Lender hereby declare it their intentions to modify, amend and alter the "Note", for good and valuable consideration, the receipt of which is hereby acknowledged by the parties as follows:
The maturity date, when the entire unpaid principal balance, accrued and unpaid interest, and costs, if any, is hereby extended from April 19, 2014 to April 19, 2015.

(2) The outstanding principal balance for the loan as of April 19, 2014, was $2,500,000.00.

(3) The principal amount of the loan shall be paid down in the amount of $250,000.00 with this extension.

(4) The interest rate is hereby changed from The Wall Street Journal Prime plus one percent (1.00%), with a floor of six percent (6%) to The Wall Street Journal Prime plus one percent (1.00%), with a floor of five percent (5%) effective September 1, 2014.

(5) Procedures for Advances to Pay Interest. If and to the extent that there are sufficient funds on deposit in the deposit account described in paragraph (C) above ("Pledged Account") to pay interest on the Loan, Lender may cause such funds to be withdrawn from the Pledged Account and applied to interest as and when due by recording on its books a withdrawal in the amount of the interest payment due and simultaneously recording on its books a receipt of a payment in the amount of the interest payment due. Lender may cease making advances for the payment of interest upon notice to Borrower upon the occurrence of a default or Lender's determination that funds deposited in the Pledged Account are insufficient. No separate interest reserve shall be created by this Agreement or the Commercial Pledge Agreement of even date herewith concerning the Pledged Account.

Escrow for Impositions and Insurance. Borrower shall pay to Lender on the day monthly installments of principal or interest are payable under the Note, until the Indebtedness is paid in full, sums ("Funds") equal to 1/12 of: (a) the yearly total amount of Impositions (defined below) which may be levied on any real property constituting collateral for the Loan (collectively, "Property"); and (b) following the occurrence of a default, the yearly premium installments for fire and other hazard insurance, rent loss insurance and such other insurance covering the Property as Lender may require under this Agreement or any of the Related Documents (defined in the Note), all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. "Impositions" means all: (i) real estate and personal property taxes and other taxes and assessments, including but not limited to water and sewer rates and charges, all other governmental or non-governmental charges, assessments, and charges for any easement or agreement maintained for the benefit of any of the Property, general or special, ordinary or extraordinary, foreseen or unforeseen, of any kind and nature whatsoever, which at any time may be assessed, levied, or imposed upon any Property or the rent or income received therefrom, or any use or occupancy thereof; and (ii) other taxes, assessments, fees and governmental or non-governmental charges levied, imposed or assessed upon or against any Property. The Funds shall be held in an account with Lender and, at the option of Lender, may be held in the Pledged Account. Notwithstanding the foregoing, if and to the extent that Lender has determined that funds on deposit in the Pledged Account are sufficient to pay interest on the Loan as and when due in accordance with the preceding paragraph regarding the payment of interest as well as all Impositions, then Lender may withdraw funds from the Pledged Account for all such purposes; provided, however, that Borrower shall be responsible for the payment of all Impositions and all amounts due on the Loan even if funds on deposit in the Pledged Account are not sufficient for such purposes. Lender shall apply the Funds to pay the Impositions so long as no default has occurred. Lender shall not be required to pay Borrower any interest, earnings or profits on the Funds or any funds on deposit in the Pledged Account. Lender shall give to Borrower an annual accounting of the Funds on Lender's normal format showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the Loan and the obligations of Borrower and all other obligors to Lender. If the amount of Funds held by Lender at the time of the annual accounting thereof shall exceed the amount deemed necessary by Lender to provide for the payment of Impositions and insurance premiums as they fall due, such excess may be retained by Lender as additional security for the Loan. If at any time the amount of the Funds held by Lender is less than the amount deemed necessary by Lender to pay sums in connection with the Loan then due or thereafter to become due and to pay all Impositions and insurance premiums as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 10 calendar days after request by Lender. Upon the occurrence of a default, Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, any Funds held by Lender at the time of application (a) to pay Impositions and insurance premiums which are then or will thereafter become due, or (b) as a credit against the Loan. Upon indefeasible payment in full of the Loan, Lender shall promptly refund to Borrower any Funds held by Lender. If at any time funds on deposit in the Pledged Account are insufficient to cover both the Funds due under this Section and the amounts due under the Note, and if any monthly payment then made by Borrower is also insufficient to cover both the Funds due under this Section and the amounts due under the Note, then Lender shall apply any payments or other funds of Borrower first to the Funds due under this Section and then to amounts due under the Note, in the order described in the Note, or in such other order or proportion as Lender may determine.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL PROVISION.** The Borrower represents and warrants to the Lender that this loan is being obtained exclusively for the purposes of carrying on or acquiring a business or commercial enterprise.

**CONFESSED JUDGMENT.** Borrower authorizes any attorney designated by Lender or any clerk of any court of record to appear for Borrower and confess judgment against Borrower in favor of Lender for the full amount due on the Loan (including principal, accrued interest, charges and fees), plus court costs, plus attorneys' fees equal to 10% of the amount due, all without prior notice or opportunity of Borrower for prior hearing, without stay of execution or right of appeal, and expressly waiving the benefit of all exemption laws and any irregularity or error in entering any such judgment. No single exercise of the power to confess judgment granted in this Section shall exhaust the power, regardless of whether such exercise is ruled invalid, void or voidable by any court, nor shall this Agreement or any other Loan Document, Lender's right to attorneys' fees in the amount described herein or any other obligation hereunder or under any other Loan Document merge into any such judgment. The power to confess judgment granted in this paragraph may be exercised from time to time as often as Lender may elect. Borrower acknowledges that the actual amount of attorneys' fees incurred by Lender would be impossible to calculate at the time judgment by confession is entered, as all such fees would not yet have been incurred. Accordingly, Borrower agrees that attorneys' fees equal to 10% of the amount due are reasonable given the circumstances. Notwithstanding Lender's right to obtain a judgment for attorneys' fees in the amount described in this Section, Lender shall be entitled to retain only such attorneys' fees as are incurred by Lender in accordance with the Note. If the terms of this Section conflict with the terms of any other Loan Document, then the terms of this Section shall control.

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No:                                                                                                                 Page 2

**ADDITIONAL PROVISIONS.** Borrower is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware. Borrower has the power and authority to consummate the transactions contemplated hereby, and has taken all necessary action to authorize the execution, delivery, and performance of this Borrower and any other documents executed and delivered by Borrower.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

OB LLC

By: _____ (Seal)
M. Louis Offen, M.D., Manager of OB LLC

DTC LLC, Member of OB LLC

By: _____ (Seal)
M. Louis Offen, M.D., Manager of DTC LLC

**LENDER:**

AMERICAN BANK

X _____
Authorized Signer