**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

In re                                                                     Case No. 25-20897-MCR

OB LLC                                                               Chapter 11

     Debtor.

_____/

**FIRST AND FINAL APPLICATION OF THE
VERSTANDIG LAW FIRM, LLC D/B/A THE BELMONT
FIRM FOR PAYMENT OF LEGAL FEES AND REIMBURSEMENT OF EXPENSES**

Comes now The VerStandig Law Firm, LLC d/b/a The Belmont Firm ("VLF"), by and

through undersigned counsel, pursuant to Sections 327 and 330 of Title 11 of the United States

Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2016, Local Rule 2016-1,

and Appendix D to the Local Rules, and moves for approval of (i) $20,000.00[1] in legal fees; and

(ii) $15.90 in reimbursable expenses; for a total approval of (iii) $20,015.90, to be paid under the

plan of reorganization (the "Plan," as found at DE #50), as confirmed and modified by this

Honorable Court's confirmation order (the "Confirmation Order," as found at DE #69), and in

support thereof VLF states as follows:

    **I.**       **Introduction**

This has been a fairly expedient—and, undoubtedly, *sui generis*—chapter 11 case in which

OB LLC ("OB" or the "Debtor") was able to successfully confirm a plan of reorganization.

Between the petition date and the confirmation date, though, significant work was required, as the

Debtor's subchapter V eligibility was challenged alongside a motion suggesting OB to be a single

---

[1] The precisely even number is a coincidence. As discussed *infra*, 33.5 billable hours were expended; since .2 of those hours were billed at a discounted rate in recognition of time expended being largely administrative, the total fees happen to come out to an oddly-round figure.

asset real estate entity. A claim objection—directed to the estate's largest creditor—was also prepared and filed, with extensive time being devoted to reviewing historic payment and amortization records as part of the drafting process. And there was, too, a contested sale motion, aimed at monetizing the Debtor's sole asset and ensuring some finality begin to visit an otherwise oft-tortured history of dealings between OB and its secured lender.

For these efforts, together with the other tasks requisite of a chapter 11 case (operating reports, meeting of creditors, initial debtor interview, status report, etc.), VLF now seeks compensation in accord with the rigors of the Bankruptcy Code.

## II.    Recitations Pursuant to Federal and Local Rules

Rule 2016(a)(1)(A) / Appendix D, § A(1-5): This application seeks allowance of $20,000.00 in legal fees, for 33.5 billable hours of attorney time, and reimbursement of $15.90 in expenses. The blended average billable rate for legal services is $597.01. A discussion of services rendered is included *infra* as part of the lodestar analysis and time records, memorializing the nature of all such services, are appended hereto as Exhibit A.

Rule 2016(a)(1)(B): No interim compensation was sought in this case. However, $3,298.00 was paid to VLF for pre-petition services and reimbursement of pre-petition expenses (including prepayment of the filing fee in this case).

Rule 2016(a)(1)(C): VLF is holding a pre-petition retainer of $11,702.00, paid by the Debtor, that will be paid (i) first, to the Subchapter V trustee for payment of his allowed fees and expenses in this case (upon the granting of such allowance); and (ii) second, to the retirement of part of the fees and expenses sought in this application (also upon the granting of such allowance), to the extent monies remain after payment of the Subchapter V trustee's fees and expenses. Any

2

allowed fees and costs payable to VLF, after exhaustion of the retainer funds, will take the form of an allowed administrative claim against the Debtor's bankruptcy estate.

Rule 2016(a)(1)(D): No previous compensation has been shared.

Rule 2016(a)(1)(E-F): There does not exist any agreement or understanding between VLF and any other entity for sharing compensation for services rendered in connection with this case.

Appendix D, § A(6-7): The necessity of the services rendered, alongside matters relevant to the determination of the reasonableness of the time expended, are discussed in greater detail *infra* as part of the lodestar analysis.

Appendix D, § A(8): By signing this application, undersigned counsel avers that it is his good faith belief the compensation requested is reasonable based upon the customary compensation and reimbursement of expenses charged by VLF and comparably skilled professionals in non-bankruptcy matters.

Appendix D, § A: An order approving the employment of VLF was entered on December 11, 2025. DE #24.

### III.     Categorization of Time Entries Since First Interim Application

In accord with guidelines promulgated by the United States Trustee, VLF recorded all time in this matter in project categories. The time recorded—and compensation requested—for each such project category, is as follows:

a. Case Administration – 29.3 Hours – $17,480.00 in fees; $2.34 in reimbursements

b. Plan and Disclosure Statement – 3.8 Hours – $2,280.00 in fees; $13.56 in reimbursements

c. Employment and Fee Applications – 0.4 Hours – $240.00 in fees

IV.   *Johnson* **Factors**

Familiarly, the Fifth Circuit Court of Appeals established the factors by which an attorney's request for compensation ought to be assessed, in the matter of *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), with the Fourth Circuit subsequently adopting these factors. *See Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978). VLF accordingly addresses each criterion herein:

a.  **The time and labor required**

As noted *supra*, VLF devoted 33.5 billable attorney hours of time to this case. Not surprisingly, such is actually an understatement of time: attorney discretion is regularly exercised to not bill for short phone calls or e-mails, just as discretion is regularly applied to not always invoice for those miscellaneous spots of personal time when a case-centric observation pops into one's head. The whole of these 33.5 hours come in the form of legal work, excepting 0.2 hours which were of a more administrative variety and which were accordingly billed at a reduced administrative rate of $100.00 per hour.

Much of the time spent on this case was applied to "ordinary" facets of a small business chapter 11 case. An initial debtor interview was attended, as was a meeting of creditors; a status conference was held, with a report being filed in advance of the same; and a plan of reorganization was prepared, amended, and ultimately confirmed.

This case did, too, have certain more unique eccentricities. A full evidentiary hearing was held on the Debtor's eligibility under subchapter V of the Bankruptcy Code, with the same hearing testing the permissibility of a proposed sale of the Debtor's lone asset. Some of the legal arguments tested in this case were more novel than others; delving into the peculiarities of the Debtor's lone asset, the zoning thereof, and the history thereof, proved instrumental to making a sale viable,

allowing a subchapter V plan to be confirmed, and ensuring significant savings in the form of a transfer tax exemption and exclusion from the application of US Trustee fees.

Further, a claim objection—pegged to a relatively gnarly loan history and the application of historic impositions and payments—was prepared pre-confirmation. While that objection is still pending, and is being litigated post-confirmation, the preparation thereof was instrumental to not merely evidencing the path forward for this case but, too, garnering a command of facts highly relevant to a contested sale hearing.

### b. The novelty and difficulty of the questions

Most of the questions in this case were relatively mundane: the innerworkings of a subchapter V case and the confirmation of a subchapter V plan are rather common at this point in time. But the case did invite one novel issue, ultimately litigated on the merits: whether or not a debtor holding only an undeveloped tract of land, with purely residential zoning, is a single asset real estate entity. As noted *supra*, this issue was of enormous import to ensuring the feasibility of the Debtor's plan of reorganization and ability to avoid the payment of US Trustee fees.

### c. The skill requisite to perform the legal service properly

This is an awkward factor, inasmuch as the consideration turns on the *Johnson* Court's holding that "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. It stands to reason rather few attorneys will self-assess themselves in an objective manner, let alone self-assess negatively, and such may well be why this criterion is expressly dependent upon judicial observation.

Still, undersigned counsel believes he presented clean work product in this case, was appropriately prepared for hearings, and proved sufficiently capable in handling matters before this Honorable Court. There exists no delusion that another attorney would not have been able to

realize the same results, though there also exists a cautious optimism that skill acquired through experience and education did directly inform the ability of the Debtor to successfully reorganize.

### d. The preclusion of other employment by the attorney due to acceptance of the case

VLF does not assert this case required the firm to turn away any other legal work.

### e. The customary fee

VLF's principal charged an hourly rate of $600 for this case, excepting for the performance of a single administrative task for which a lower hourly rate of $100 was charged. These figures are, anecdotally, in line with the prevailing normative range of fees charged by chapter 11 counsel in the Washington, DC metropolitan area, and are consistent with what VLF charged other debtor-side clients in the same marketplace at the time of this case's commencement.

The firm primarily operates in the District of Columbia and the District of North Dakota, normatively charging between $500 and $600 per hour to clients in the former market and between $400 and $500 per hour to clients in the latter market. At the time this case was commenced, $600 per hour was the firm's standard partner rate for District of Columbia cases and was applied to this case given the geographic proximity to the District of Columbia and the almost-complete overlap of the Greenbelt and Washington, DC bankruptcy bars.

These rates are—and always have been—market competitive in nature. Certain attorneys charge more and certain attorneys charge less, but it is respectfully submitted that $600 per hour for partner time, and $100 per hour for administrative time, are appropriate rates for this variety of work in the Beltway region.

### f. Whether the fee is fixed or contingent

The fees charged in this case are uniformly based on hourly work, with all time recorded in tenth-of-an-hour increments.

**g. Time limitations imposed by the client or the circumstances**

VLF does not assert this case invited any unusual temporal limitations.

**h. The amount involved and the results obtained**

This case resulted in the sale of the Debtor's lone asset for $4,000,000.00. The sale would not have been possible but for utilization of the subchapter V process and this Honorable Court's approval both of the sale itself and a correlative plan of reorganization (used to effectuate critical transfer tax savings). It is respectfully urged that legal fees of $20,000.00, which come out to 0.5% of the value realized by the Debtor's estate, are proportionately reasonable in nature.

**i. The experience, reputation, and ability of the attorneys**

Maurice VerStandig ("Mr. VerStandig") is the only attorney to have worked on this case; while VLF employs a second lawyer, who normally works alongside Mr. VerStandig on most chapter 11 matters, unrelated matters kept that attorney fully occupied during the relatively brief pre-confirmation pendency of this case.

Mr. VerStandig graduated from the University of Miami School of Law, *cum laude*, in 2009 and, following a one year clerkship, has been practicing law for 16 years. The overwhelming majority of his practice is devoted to chapter 11 insolvency cases. As noted above, his work is largely split between the District of Columbia and the District of North Dakota, though he also regularly handles bankruptcy cases in this Honorable Court and the United States Bankruptcy Court for the Eastern District of Virginia; on rarer occasions, has appeared in the Southern District of Florida, the District of Nevada, the Central District of California, and the Southern District of New York. He has been a member of the local rules committee, and standing bench/bar committee, for the United States Bankruptcy Court for the District of Columbia since 2020; he has served as an associate editor of the American Bankruptcy Institute Journal since 2021; and he was a member

of the American Bankruptcy Institute's "40 Under 40" class of 2024. Mr. VerStandig regularly publishes articles on bankruptcy-centric topics and frequently speaks at regional and local bar conferences on emerging issues in chapter 11.

### j.  The "undesirability" of the case

VLF does not assert this to have been an undesirable case.

### k.  The nature and length of the professional relationship with the client

As is common in the realm of debtor-side chapter 11 work, VLF did not have any relationship with the Debtor before being approached about a potential bankruptcy filing.

### l.  Awards in similar cases

The award sought instantly is—anecdotally—well in line with those regularly petitioned for, and awarded, in other subchapter V cases in this Honorable Court and neighboring courts.

## V.      Travel Time and Expenses

Per VLF's agreement with the Debtor in this case (which mirrors, topically, VLF's standard form of agreement), no charge has been applied for travel time, and no reimbursement is sought for travel expenses. While VLF's attorneys both reside outside the Washington, DC region, the firm is proud to have a vibrant local practice and regards travel as an overhead expenses to be born by the firm and not its clientele.

## VI.     Conclusion

WHEREFORE, The VerStandig Law Firm, LLC d/b/a The Belmont Firm respectfully prays this Honorable Court (i) finally approve and ratify the fees sought herein, in the sum of $20,000.00; (ii) finally approve and ratify the expenses for which reimbursement is sought herein, in the sum of $15.90; (iii) grant VLF an allowed administrative claim against the Debtor's estate,

8

to be paid in accord with the Plan, in the sum of $20,015.90; and (iv) afford such other and further

relief as may be just and proper.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Counsel for The VerStandig Law
Firm, LLC*

*[Certificate of Service on Following Page]*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of April, 2026, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Justin Philip Fasano    jfasano@mhlawyers.com,
  jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
- Kevin R. Feig    kfeig@mhlawyers.com,
  kfeig@ecf.courtdrive.com;jnesse@mhlawyers.com;cmartin@mhlawyers.com
- James Taylor Heidelbach    jheid@gebsmith.com
- Nicole C. Kenworthy    bdept@mrrlaw.net
- Keith M. Lusby    klusby@gebsmith.com
- Stephen A. Metz    smetz@offitkurman.com,
  MD71@ecfcbis.com;lydia.yale@offitkurman.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com,
  lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on the 2nd day of April, 2026, a copy of the notice affixed hereto (but not this application or any other exhibit affixed hereto) is being sent via First Class Mail, postage prepaid,  to all parties on the mailing matrix attached hereto as Exhibit B, *except* that no copy is being mailed to undersigned counsel.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.