**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| In re | Case No. 25-20897-MCR |
| OB LLC | Chapter 11 |
| Reorganized Debtor. | |

______________________________________/

**DEBTOR'S ANSWERS TO INTERROGATORIES**
**AND RESPONSES TO REQUESTS FOR PRODUCTION**

Comes now OB LLC ("OB" or the "Debtor"), pursuant to Federal Rules of Bankruptcy Procedure 7033 and 7034, as well as Federal Rules of Civil Procedure 33 and 34, and responds to the interrogatories (the "Interrogatories," with each such item being an "Interrogatory") and requests for production (the "Requests," with each such item being a "Request") propounded by Democracy Capital Corporation ("DCC") as follows:

**General Objection**

OB objects to each of the Interrogatories and Requests to the extent they seek (i) any information protected by the attorney/client privilege and/or (ii) any information protected by the attorney work product doctrine. Such information is outside the permissive scope of discovery and will not be produced. *See Kennedy v. Osmanski*, 678 F. Supp. 3d 222, 224 (D. Mass. 2023).

**Interrogatories**

**Interrogatory No. 1:** Identify and describe in detail each component of the Debtor's calculation of the amount owed on the Loan as of the Petition Date, including without limitation the principal balance, any accrued interest, any late charges, any protective advances, and any fees or expenses.

DCC20

**Answer:** OB has produced a detailed calculation of the amount owed on the Loan, as found at DE #64-4 (the "Loan Balance Calculation"). This calculation shows the principal balance on the first day of each month since the Loan was originated (as well as on the petition date of this bankruptcy case), while also showing—on the same dates—the interest accrual, late charges (where applicable), and lender advances. Upon receipt of an informal request from DCC, OB would be happy to share the underlying Excel file (without the need for propounding a new document request).

**Interrogatory No. 2:** Identify each payment made by or on behalf of the Debtor in connection with the Loan, including the date the payment was made and the amount of such payment.

**Answer:** The Loan Balance Calculation reflects all payments made in connection with the Loan *except* for a payment of $3.5 million, made pursuant to Article 4 of the Debtor's confirmed plan of reorganization.

**Interrogatory No. 3:** Identify each tax payment for real estate taxes related to the Property made by the Debtor, including the date the payment was made and the amount of such payment.

**Answer:** OB does not have records reflecting each tax payment and is not able to locate information sufficient to fulsomely respond to this Interrogatory. However, the Debtor does observe that (i) the real estate has now been conveyed to a third party; (ii) the real estate was originally acquired by OB on or about October 19, 2011; (iii) certain taxes were paid by the purchaser at closing on the sale occurring pursuant to OB's plan of reorganization; (iv) the records of DCC—produced as part of the document production made herewith—show certain lender advances (as reflected on the Loan Balance Calculation); and (v) any tax payments made, between

the date on which the property was acquired, and the date on which the property was sold, are thusly either traceable to DCC's lender advance records or the payments of OB and its designees.

**Interrogatory No. 4:** For each of the CITs, state the date each such CIT was executed by the Debtor.

**Answer:** OB does not have records reflecting the dates on which documents were executed. However, a review of pertinent records suggests CITs to have been executed with correlative agreement dates of October 19, 2011, April 19, 2013, and April 19, 2015.

**Interrogatory No. 5:** Identify all communications concerning the amount due and owing under the Loan, including any payoff figure, balance, or estimate thereof.

**Answer:** Pursuant to Federal Rule of Civil Procedure 33(d), all such communications in the possession, custody and control of OB—excepting those of a privileged nature—are being produced herewith.

**Interrogatory No. 6:** Identify all communications concerning any missed payment, late payment, or any other default under the Loan and Loan Documents.

**Answer:** Pursuant to Federal Rule of Civil Procedure 33(d), all such documentation in the possession, custody and control of OB—excepting that of a privileged nature—is being produced herewith.

**Interrogatory No. 7**: Identify all communications concerning the Proposed Sale.

**Answer:** Pursuant to Federal Rule of Civil Procedure 33(d), all such communications in the possession, custody and control of OB—excepting those of a privileged nature—are being produced herewith or, to the extent not produced herewith, will be produced in a reasonably prompt manner.

**Interrogatory No. 8:** Describe in detail how the Debtor calculated the $3,500,000.00 purchase price for the Proposed Sale, including any calculations, projections, or analysis of anticipated net proceeds.

**Answer:** The Debtor relied on the payoff figure received from DCC's Chairman and CEO, giving a $2.7 million payoff figure, and then arrived at a purchase price that would allow the Debtor to net the remaining $800,000.00 as a return on investment. The Debtor knew this would still be a net loss, insofar as historic payments and carrying costs, coupled with carrying costs, would make this an unprofitable venture. But the Debtor was willing to part with the asset for an $800,000.00 return at closing (less closing costs). The Debtor then used this desired return to negotiate the sales price with the purchaser. The contract also allowed the buyer to purchase an extension to close, which they did one time, so at the time of the first scheduled closing, the purchase price was $3,550,000.

**Interrogatory No. 9:** Describe in detail the professional background, experience, and qualifications of Erik Bolog, including his legal training, prior positions in the banking or legal industry, and any role he played as general counsel or in a similar capacity with the Original Lender or any other financial institution.

**Objection:** The Debtor objects to this Interrogatory on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence. The dispute at issue in the Claim Proceeding centers on the total debt owed to DCC. Mr. Bolog's experience and history are facially immaterial to this largely-mathematical question, just as they are immaterial to the detrimental reliance occasioned by Mr. Schuble's furnishing of a payoff figure and subsequent decision to disregard that payoff figure.

**Answer:** Subject to, and without waiving, the foregoing objection, the Debtor notes that Mr. Bolog is an attorney with a broad and diversified array of legal experience.

**Interrogatory No. 10:** Identify all persons or entities with knowledge of any fact relevant to the Claim Proceedings, and for each person or entity identified, describe the nature of their knowledge.

**Answer:** Excepting counsel for the various parties, it is believed the persons with discoverable knowledge of the issues in the Claim Proceeding are (i) those identified in response to Interrogatory 12; (ii) Stephen Metz, Esq., the Subchapter V trustee of OB; and (iii) the real estate purchaser.

**Interrogatory No. 11:** Identify all expert witnesses the Debtor intends to call in connection with the Claim Proceedings, and for each expert, describe the subject matter of their anticipated testimony and identify all documents reviewed or relied upon in forming their opinions.

**Answer:** OB does not intend to rely on the services of an expert in connection with the Claim Proceeding. The only issues beyond the ken of knowledge of the average layperson are those related to (i) the computation of interest and correlative obligations; and (ii) the law governing indebtedness in Maryland. Both of these issues are within the expertise of the Bankruptcy Court and, as such, while counsel may argue points related to these issues, OB does not believe an expert is needed to assist the fact-finder with understanding matters already within the ken of knowledge of the fact-finder. James Plack and Mike Postal can both be qualified as expert witnesses and can be asked expert opinions.

**Interrogatory No. 12:** Identify all fact witnesses the Debtor expects to call in connection with the Claim Proceedings, and for each such person, state the subject matter of the testimony.

**Answer:** OB intends to rely upon the testimony of (i) Erik Bolog, (ii) Jim Plack; (iii) JR Schuble; and (iv) any records custodians whose testimony may be needed to authenticate documents offered into evidence. It is reasonably expected the testimony of Messrs. Bolog, Plack, and Schuble will uniformly touch upon the history of the Loan, the Debtor's pre-petition efforts to sell the secured property, the calculation of payoff sums, the communication of payoff figures (alongside Loan history figures) to OB and its agents, and the authenticity of various documents.

**Interrogatory No. 13:** Identify all documents that the Debtor intends to rely upon in any hearing or trial relating to the Claim Proceedings.

**Answer:** Pursuant to Federal Rule of Civil Procedure 33(d), all such documentation in the possession, custody and control of OB—excepting that of a privileged nature—is being produced herewith. OB has subpoenaed documents from a third party; to the extent documents are received in response to that subpoena, the whole of such production—regardless of OB's intent to rely upon any part(s) thereof—will be produced to counsel for DCC.

**Interrogatory No. 14:** Identify all persons who have held a position as an officer or manager of the Debtor since the date the Loan was extended, and set forth the position and date range each person held such position.

**Answer:** Dr. M. Louis Offen has been the managing member of the Debtor at all times relevant. Mr. Bolog has served as an agent of the Debtor for many years.

**Interrogatory No. 15:** State with specificity the amount of damages the Debtor contends it suffered as a result of its alleged reliance on the Text Message, and describe all facts supporting such contention.

**Answer:** $800,000.00. The Debtor incorporates, by reference, its response to Interrogatory 8.

**Interrogatory No. 16:** State all facts supporting the Debtor's contention that it relied on the Text Message to its detriment, including each action the Debtor contends it took or refrained from taking in reliance thereon.

**Answer:** The Debtor incorporates, by reference, its response to Interrogatory 8.

**Interrogatory No. 17:** Identify all of the reasons that the Proposed Sale did not close as contemplated.

**Answer:** The failure of the Proposed Sale to close was solely attributable to DCC changing its payoff number, capriciously and arbitrarily, in an effort to seize as much of the monies realizable by OB as possible. OB was unwilling to part with the asset for the slender sum of money that would have remained had DCC's altered payoff figure been satisfied at closing and thusly walked away from the deal.

**Interrogatory No. 18:** Identify each component of the Democracy Calculation that the Debtor contends is incorrect, and for each such component, state the basis for the Debtor's contention and the amount the Debtor contends should have been included.

**Answer**: The Debtor asserts Democracy's calculation, to the extent such varies from the payoff figure furnished by the entity's chairman—as discussed in response to Interrogatory 8—is errant. In further answer, the Debtor notes that Democracy (i) is charging late fees for periods of time in which no such fees are applicable; (ii) is twice charging a default penalty; (iii) is charging interest on lender advances; and (iv) is errant to the extent Democracy's calculations differ from the Debtor's.

**Interrogatory No. 19:** If the Debtor contends that Democracy is not entitled to charge interest on any protective advance made by it, state all facts supporting such contention.

**Objection:** The Debtor objects to this Interrogatory on the basis that it calls for a conclusion of law. Specifically, the manner in which a promissory note—and amendments thereto—is to be construed is a question of legal interpretation, not a question of fact. Such is not appropriate fodder for the taking of discovery. *See* Fed. R. Evidence 701(c); *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Fed. Aviation Admin. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983).

**Answer:** Subject to, and without waiving, the foregoing objection, the Debtor notes that (i) the loan documents do not provide for interest to be charged on protective advances; and (ii) any ambiguities in the loan documents are to be construed against the interest of the drafting party, in whose shoes DCC stands as the successor holder of the promissory note.

**Interrogatory No. 20**: If the Debtor contends that any of the dates of payment reflected in the Loan History are inaccurate, identify each such payment, state the date the Debtor contends is correct, and state all facts supporting such contention.

**Answer:** The Debtor notes that the Loan History does not include the $3.5 million payment at closing on a sale of the property, pursuant to the Debtor's plan of reorganization.

**Interrogatory No. 21:** Identify the first payment due and owing under the Loan that the Debtor contends was not timely made.

**Answer:** The Debtor is without information sufficient to answer this Interrogatory, given the aged nature of the subject loan. However, the Debtor does observe that its own calculations reflect a late fee being charged for the payment due on November 12, 2012. On numerous occasions, the Debtor was informed a default would not be declared absent extraordinary circumstances.

**Interrogatory No. 22**: If you contend that a late payment does not constitute an Event of Default under the Loan Documents, state all facts supporting such contention.

**Objection:** The Debtor objects to this Interrogatory on the basis that it calls for a conclusion of law. Specifically, the manner in which a promissory note—and amendments thereto—is to be construed is a question of legal interpretation, not a question of fact. Such is not appropriate fodder for the taking of discovery. *See* Fed. R. Evidence 701(c); *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Fed. Aviation Admin. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983).

**Answer:** Subject to, and without waiving, the foregoing objection, the Debtor notes that the provision of a "Late Charge" in the promissory note contemplates that late payments shall be permitted in exchange for the bargained-for late fee. The "Late Charge" provision would be superfluous—and would thusly constitute impermissible dicta—if the making of a late monthly payment were an "Even of Default" sufficient to allow DCC to accelerate the full sum of the note. Moreover, the historical payment histories and courses of dealings, between the parties, further evidence this reality, insofar as no default was ever declared for the making of a late payment and no loan history—before the events at issue in this dispute—ever suggested an acceleration of debt or imposition of any other default remedy to follow the making of a late payment. As noted *supra*, any ambiguities in the loan documents are to be construed in favor of OB.

**Interrogatory No. 23:** If you contend that the real property located at 5226 Pooks Hill Road, Bethesda, Maryland was not required to be pledged as collateral for repayment of the Loan, state all facts supporting such contention.

**Objection:** The Debtor objects to this Interrogatory on the basis that it calls for a conclusion of law. Specifically, the manner in which a promissory note—and amendments

thereto—is to be construed is a question of legal interpretation, not a question of fact. Such is not appropriate fodder for the taking of discovery. *See* Fed. R. Evidence 701(c); *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Fed. Aviation Admin. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983).

**Answer:** Subject to, and without waiving, the foregoing objection, the Debtor notes that the loan documents speak for themselves.

**Interrogatory No. 24:** If you contend that the Debtor was not required to establish a $50,000 real estate tax reserve under the Loan Documents, state all facts supporting such contention.

**Objection:** The Debtor objects to this Interrogatory on the basis that it calls for a conclusion of law. Specifically, the manner in which a promissory note—and amendments thereto—is to be construed is a question of legal interpretation, not a question of fact. Such is not appropriate fodder for the taking of discovery. *See* Fed. R. Evidence 701(c); *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Fed. Aviation Admin. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983).

**Answer:** Subject to, and without waiving, the foregoing objection, the Debtor notes that the loan documents speak for themselves. If this was in fact part of the loan documents, and if this amount was not paid, the bank never asserted this as a default.

I declare under penalty of perjury that the foregoing is true and correct.

DocuSigned by:
8F88394300394DD... 6/22/2026

OB LLC
By: Erik Bolog

Respectfully submitted,

Dated: June 22, 2026

By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Reorganized Debtor*

**IN THE UNITED STATES UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In re<br><br>OB LLC,<br><br>Debtor. | Case No. 25-20897<br><br>Chapter 11 |

**DEMOCRACY CAPITAL CORPORATION'S**
**<u>FIRST SET OF INTERROGATORIES</u>**

**TO:** OB LLC (the "Debtor")

**FROM:** Democracy Capital Corporation ("Democracy")

These Interrogatories are served in connection with the Debtor's pending claim objection. Democracy requests that the Debtor answer the following Interrogatories pursuant to Rule 7033 of the *Federal Rules of Bankruptcy Procedure* ("Rule"), made applicable to these proceedings pursuant to Rules 9014(c) and 7033.

**I.**
**INSTRUCTIONS**

1. You are requested to respond to each of these Interrogatories separately and fully, in writing and under oath, and to serve a copy of your responses upon the undersigned counsel within thirty days after service of these Interrogatories pursuant to *Fed. R. Civ. P.* 33, as made applicable by Rule 7033 and 9014.

2. These Interrogatories are continuing in character, so as to require that supplemental answers be filed seasonably if further or different information is obtained with respect to any Interrogatory.

3. Your response to these Interrogatories should indicate with respect to each request (1) whether a full answer will be provided as requested or (2) whether the Interrogatory is objected to and the reason for the objection.

4. If objection is made to part of an Interrogatory, the part must be specified, and an answer must be provided as to the remaining parts. An objection must state whether any responsive information is being withheld on the basis of that objection.

5. In accordance with *Fed. R. Civ. P.* 26(b)(5), where a claim of privilege is asserted in objecting to any Interrogatory, or part thereof, and information is not provided on the basis of such assertion, the responding party shall identify with specificity the nature of the privilege (including work product) being claimed and shall provide the following information to the extent known or reasonably available, without disclosing the allegedly privileged information.

6. For oral communications: the name of the person making the communication and the names of persons present; the date and place of the communication; and the general subject matter of the communication.

7. For documents: the type of document; the general subject matter; the date of the document; and such other information as is sufficient to identify the document, including the author, addressee, custodian, and any other recipient.

8. If the responding party elects to specify and produce business records in answer to any Interrogatory pursuant to *Fed. R. Civ. P.* 33(d), the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained.

9. If, in answering these Interrogatories, the responding party encounters any ambiguity when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

10. These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and, unless privileged, attorneys.

11. Responses to these Interrogatories must be timely supplemented in accordance with the *Federal Rules of Civil Procedure*, as made applicable to these proceedings by the *Federal Rules of Bankruptcy Procedure.*

## II.
## GENERAL DEFINITIONS

1. The pronouns "you" and "your" refer to the responding party and the responding party's agents, members, employees, representatives, and, unless privileged, accountants and attorneys.

2. The term "person" means individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, public agencies, departments, bureaus and boards, and any other type of business, commercial or public entity.

3. The term "communication" means the transmittal of information by any means.

4. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

5. The term "ESI" refers to electronically stored information, which includes any and all data that is stored in any medium from which information can be obtained and translated, if necessary, through detection devices into a reasonably usable form.

6. The term "document" includes both ESI and information that is not electronically stored and means and covers any recorded, written, printed, typed, graphic, or electronic material of any kind, variety, type and character (whether copy or original). The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in *Fed. R. Civ. P.* 34(a) and include(s) the term "writing." Unless the producing party demonstrates undue burden or other grounds sufficient to meet the requirements of *Fed. R. Civ. P.* 26(c), electronic mail is included within the term "document." A draft or non-identical copy is a separate document within the term "document."

7. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories any information that might otherwise be construed not to be responsive.

8. When referring to a person, to "identify" means to state the person's full name, present or last known address, present or last known place of employment, and, if known, telephone number. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

9. When referring to documents, to "identify" means to state: (i) the type of document; (ii) the general subject matter; (iii) the date of the document; and (iv) the author(s), addressee(s), and recipient(s)—or, alternatively, to produce the document.

## III.
## SPECIFIC DEFINITIONS

1. The term "Claim Proceedings" refers to the contested matter arising out of the Debtor's objection to Democracy's Proof of Claim.

2. The term "CITs" means each and every Change In Terms or other agreements pursuant to which the terms and conditions of the Loan were modified.

3. The term "Democracy" means Democracy Capital Corporation and any of its affiliates, agents, assigns, and/or attorneys.

4. The term "Democracy Calculation" refers to the spreadsheet appended hereto as Exhibit A setting forth Democracy's calculation of the claim.

5. The term "Loan" means the $2.5 million commercial loan originally extended by the Original Lender to the Debtor, evidenced by a $2,500,000.00 Promissory Note dated October 19, 2011.

6. The term "Loan Documents" means any and all documents evidencing, securing, or otherwise relating to the Loan, including, but not limited to, each of the loan documents identified and attached to the Proof of Claim.

7. The term "Lender" means the holder and owner of the Loan Documents at any given time, including the Original Lender and Democracy.

8. The term "Loan History" means the loan history provided by the Original Lender and which was attached to the Debtor's objection to Democracy's proof of claim.

9. The term "OB" or the "Debtor" means Debtor, OB LLC, and any of its affiliates, agents, assigns, and/or attorneys.

10. The term "Original Lender" means American Bank, together with its successor by merger, Congressional Bank (now known as Forbright Bank).

11. The term "Petition Date" means November 19, 2025.

12. The term "Purchaser" means Werrlein Properties Limited Liability Company, and any of its affiliates, agents, assigns, and/or attorneys.

13. The term "Property" means the real property commonly known as 8800 Grandhaven Avenue, Upper Marlboro, Maryland 20772.

14. The term "Proof of Claim" means the Proof of Claim filed by Democracy in this bankruptcy case at Claim Number 1.

15. The term "Proposed Sale" means the sale of the Property that the Debtor contends was scheduled to close on or around July 2024 to the Purchaser for a purchase price of $3,500,000.00.

16. The term "Text Message" means the text message that the Debtor contends was sent by Democracy to the Debtor on or about August 2023 referencing "Approx 2.7" as the amount due under the Loan.

## IV.
## INTERROGATORIES

**Interrogatory No. 1:** Identify and describe in detail each component of the Debtor's calculation of the amount owed on the Loan as of the Petition Date, including without limitation the principal balance, any accrued interest, any late charges, any protective advances, and any fees or expenses.

**Interrogatory No. 2:** Identify each payment made by or on behalf of the Debtor in connection with the Loan, including the date the payment was made and the amount of such payment.

**Interrogatory No. 3:** Identify each tax payment for real estate taxes related to the Property made by the Debtor, including the date the payment was made and the amount of such payment.

**Interrogatory No. 4:** For each of the CITs, state the date each such CIT was executed by the Debtor.

**Interrogatory No. 5:** Identify all communications concerning the amount due and owing under the Loan, including any payoff figure, balance, or estimate thereof.

**Interrogatory No. 6:** Identify all communications concerning any missed payment, late payment, or any other default under the Loan and Loan Documents.

**Interrogatory No. 7**: Identify all communications concerning the Proposed Sale.

**Interrogatory No. 8:** Describe in detail how the Debtor calculated the $3,500,000.00 purchase price for the Proposed Sale, including any calculations, projections, or analysis of anticipated net proceeds.

**Interrogatory No. 9:** Describe in detail the professional background, experience, and qualifications of Erik Bolog, including his legal training, prior positions in the banking or legal industry, and any role he played as general counsel or in a similar capacity with the Original Lender or any other financial institution.

**Interrogatory No. 10:** Identify all persons or entities with knowledge of any fact relevant to the Claim Proceedings, and for each person or entity identified, describe the nature of their knowledge.

**Interrogatory No. 11:** Identify all expert witnesses the Debtor intends to call in connection with the Claim Proceedings, and for each expert, describe the subject matter of their anticipated testimony and identify all documents reviewed or relied upon in forming their opinions.

**Interrogatory No. 12:** Identify all fact witnesses the Debtor expects to call in connection with the Claim Proceedings, and for each such person, state the subject matter of the testimony.

**Interrogatory No. 13:** Identify all documents that the Debtor intends to rely upon in any hearing or trial relating to the Claim Proceedings.

**Interrogatory No. 14:** Identify all persons who have held a position as an officer or manager of the Debtor since the date the Loan was extended, and set forth the position and date range each person held such position.

**Interrogatory No. 15:** State with specificity the amount of damages the Debtor contends it suffered as a result of its alleged reliance on the Text Message, and describe all facts supporting such contention.

**Interrogatory No. 16:** State all facts supporting the Debtor's contention that it relied on the Text Message to its detriment, including each action the Debtor contends it took or refrained from taking in reliance thereon.

**Interrogatory No. 17:** Identify all of the reasons that the Proposed Sale did not close as contemplated.

**Interrogatory No. 18:** Identify each component of the Democracy Calculation that the Debtor contends is incorrect, and for each such component, state the basis for the Debtor's contention and the amount the Debtor contends should have been included.

**Interrogatory No. 19:** If the Debtor contends that Democracy is not entitled to charge interest on any protective advance made by it, state all facts supporting such contention.

**Interrogatory No. 20**: If the Debtor contends that any of the dates of payment reflected in the Loan History are inaccurate, identify each such payment, state the date the Debtor contends is correct, and state all facts supporting such contention.

**Interrogatory No. 21:** Identify the first payment due and owing under the Loan that the Debtor contends was not timely made.

**Interrogatory No. 22**: If you contend that a late payment does not constitute an Event of Default under the Loan Documents, state all facts supporting such contention.

**Interrogatory No. 23:** If you contend that the real property located at 5226 Pooks Hill Road, Bethesda, Maryland was not required to be pledged as collateral for repayment of the Loan, state all facts supporting such contention.

**Interrogatory No. 24:** If you contend that the Debtor was not required to establish a $50,000 real estate tax reserve under the Loan Documents, state all facts supporting such contention.

Respectfully submitted,

*/s/ Keith M. Lusby*
James T. Heidelbach (Bar No. 07715)
Keith M. Lusby (Bar No. 05596)
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
(410) 385-5028
klusby@gebsmith.com
*Counsel to Democracy Capital Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2026, I served the foregoing discovery material via email on counsel to the Debtor at mac@mbvesq.com.

*/s/ Keith M. Lusby*
Keith M. Lusby